**Robert B. REICH, Secretary of Labor, United States Department of Labor, Plaintiff,**

v.

**CHEZ ROBERT, INC., and Robert Sliwowski, Individually and as Owner and President, Defendants.**

Civ. No. 87–2219 (AET).

United States District Court, D. New Jersey.

April 8, 1993.

As Amended April 12 and 22, 1993.

Leslie P. Brody, U.S. Dept. of Labor, the Solicitor, New York City, for plaintiff.

Steven William Suflas, Archer & Greiner, P.C., Haddonfield, NJ, for defendants.

## OPINION

ANNE E. THOMPSON, District Judge.

The Secretary of Labor (hereinafter "Secretary") filed a Complaint on June 4, 1987, alleging that Defendants had willfully violated the minimum wage, overtime and record keeping provisions of the Fair Labor Standards Act of 1938 (hereinafter "Act"). The Secretary seeks an injunction under Section 17 of the Act to restrain the withholding of unpaid minimum wage and overtime compensation. *See* 29 U.S.C.A. § 217 (West 1987). The Secretary also seeks liquidated damages under Section 16(c) of the Act equal in amount to the back wages due for the minimum wage and overtime violations. *See* 29 U.S.C.A. § 216(c) (West 1978).

Defendant Chez Robert, Inc. (hereinafter "Chez Robert") is a restaurant located in and organized under the laws of the State of New Jersey, having its principal place of business at 329 Haddon Avenue, Westmont, New Jersey. Defendant Robert Sliwowski has at all times material to this action been the chef, owner and chief operator of Chez Robert, exercising the regular management of the restaurant, including the hiring and firing of restaurant personnel.

During the trial of this matter, which occurred between March 23, 1992 and May 13, 1992, the parties presented extensive evidence to the Court of disputed employment facts and disparate numbers, calculations as to hours worked and wages paid. The Court's task was to determine the wide impact of this evidence and to make specific findings as to the identity of the employees, what jobs they held, what hours they worked and what earnings they accrued. This Memorandum and Order sets forth the Court's findings of fact and conclusions of law pursuant to Fed.R.Civ.P. 52(a).

### I. The Trial

The former restaurant employees of Defendant Chez Robert were the major witnesses. Through their testimony it was established that Defendants largely failed to keep records as required by law. This was particularly true from 1984 to 1987. Further, their testimony established that Defendants failed to pay employees the proper overtime wage and failed to comply with other mandated components of the Fair Labor Standards Act. Although the testimony of the Secretary's witnesses clearly established a number of Act violations, the trial also revealed that no single remedy exists for determining the precise damages owed to each employee. No employee worked the same set hours per week, nor the same number of hours per day. Some were employed for a short period of time such as two weeks, some for a longer period of time such as two years. Some employees worked when the restaurant was busy, some worked when business was slow. Each employee's testimony differed based on his or her gender, experience, job title, and time of year that he or she was employed.

Twenty-six of Defendants' former employees testified as witnesses for the Secretary. The testimony of another two witnesses was admitted into the record pursuant to Fed. R.Evid. 801(d)(2)(D) [1]. Twenty-five testified about their employment as waiters or waitresses at Chez Robert between the years of 1984 and 1987. These witnesses confirmed the undisputed fact that waiters and waitresses at Chez Robert were paid a wage rate of $2.01 per hour during the first forty hours of the work week. Witnesses further testified that many employees (particularly the male employees) worked in excess of forty hours per week, but that time cards would be removed once an employee reached forty hours and that no further records were kept for that week. Employees were compensated for their overtime work by an amount, usually between $10–$30, upon reporting their overtime hours to Defendant Sliwowski or his mother at the end of each overtime shift. Many employees testified that they did not receive any payment for their first day of work.

Testimony also revealed that while at work, employees were required to do various "side work." This included such tasks as setting the tables in the dining rooms, cleaning and polishing restaurant facilities, preparing food, and arranging flowers.

Finally, employees testified that men were required to wear a tuxedo and white tuxedo shirt, and that women were required to wear a black skirt and white shirt or apron. These uniforms had to be purchased and maintained by the employee, at his or her own expense. The Secretary claims that the expenses incurred by employees for uniforms and maintenance fees reduced many employees' wages below the lawful minimum rate for each workweek.

Defendants Chez Robert, Inc. and Robert Sliwowski now assert four major claims in their defense. First, Defendants rely on the tip credit provisions of Section 3(m) of the Act and claim that the required amount to be paid to tipped employees is 60% the applicable minimum wage, or $2.01 per hour. *See* 29 U.S.C.A. § 203(m) (1978).[2] Second, Defendants claim that records of employees' work hours were kept in the form of payroll reports, time cards, and tip sheets. Third, Defendants assert that uniforms were not a condition of employment and that almost all of the waiters and waitresses employed by Defendants already owned formal wear from previous employment. Fourth, Defendants claim that meals provided to employees for which they were not charged entitle Defendant to a meal credit pursuant to Section 3(m) of the Act.

## II. General Findings of Fact

### A. Burden of Proof

Under Section 16(b) of the Act, an employee bringing suit for unpaid minimum wages and unpaid overtime compensation bears the burden of proving by a preponderance of the evidence that he or she performed work for which he or she was not properly compensated. *Anderson v. Mt. Clemens Pottery*, 328 U.S. 680, 687, 66 S.Ct. 1187, 1192, 90 L.Ed. 1515 (1946), *reh'g denied*, 329 U.S. 822, 67 S.Ct. 25, 91 L.Ed. 699 (1946); *McLaughlin v. DialAmerica Mktg., Inc.*, 716 F.Supp. 812, 823 (D.N.J.1989), *aff'd sub nom. Dole v. DialAmerica*, 935 F.2d 1281 (3d Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 583, 116 L.Ed.2d 608 (1991). When the employer has complied with the Act and has maintained proper and adequate records, the burden of the employee is discharged by securing production of those records. *McLaughlin v. DialAmerica*, 716 F.Supp. at 823. However, where an employer has failed to keep adequate records as required by Section 211 of the Act, the em-

---

1. Rule 801(d)(2)(D) provides, in relevant part, that:

 A statement is not hearsay if—
 The statement is offered against a party and is (D) a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship.
 Fed.R.Evid. 801(d)(2)(D).

2. Throughout the period for which the Secretary seeks damages, the minimum wage remained constant at a rate of $3.35 per hour. This section of the Act permits an employer to reduce by 40% (during the dates for which damages are sought) the minimum hourly wage rate paid to tipped employees without being in violation of Section 16(c).

ployee meets the required burden if he or she can prove that work was performed for which he or she did not receive proper compensation, *and* if the employee produces sufficient evidence to show the "amount and extent of that work as a matter of just and reasonable inference." *Anderson,* 328 U.S. at 687, 66 S.Ct. at 1192. If a higher standard of proof were required, an employee would be unfairly penalized, and it would "place a premium on an employer's failure to keep proper records in conformity with his or her statutory duty." *See id.*

■ The burden then shifts to the employer to negate the reasonableness of the inference to be drawn from the employee's evidence. *McLaughlin v. DialAmerica,* 716 F.Supp. at 823. If the employer is unable to meet this burden, the court may determine and award damages to the employees. *Id.* The district court may award damages even though the result can only be reached by approximation. *Hodgson v. American Concrete Co.,* 471 F.2d 1183, 1186 (6th Cir.1973), *cert. denied,* 412 U.S. 949, 93 S.Ct. 3007, 37 L.Ed.2d 1001 (1973). Thus, the determination of what damages will be awarded is based upon the credibility of the evidence presented before the trial judge, including the weight to be accorded to the compliance officer's computations. *Id.* at 1186; *see also McLaughlin v. DialAmerica,* 716 F.Supp. at 824.

B. Uniform Expenses

■ Section 6(a) of the Act required employers to pay employees a minimum wage of $3.35 per hour during the applicable period of time. 29 U.S.C.A. § 206(a) (1978).[3] The cost of uniforms and their laundering, where the nature of the business requires the employee to wear a uniform, is a benefit to the employer and must be deducted when computing wages. *Marshall v. Krystal Co.,* 467 F.Supp. 9, 13 (E.D.Tenn.1978); 29 C.F.R. § 531.3(d) (1991).

■ At trial, almost all of the employees testified that they were told by either the person who hired them (usually Defendant Sliwowski) or another employee that they were required to wear tuxedos. As a result, almost all newly hired employees would purchase at least one outfit of formal attire including a tuxedo or skirt, tuxedo shirts, bow tie, and cummerbund. According to the testimony of the waiters, the full cost of the required outfit would range between $125.00 to over $300.00. Of the three female employees claiming uniform costs, two testified to spending $65.00 and $70.00, the third testified to having purchased a tuxedo outfit at a cost of $215.00. Replacement shirts and tuxedos were also purchased at a comparable or lesser cost.

Numerous waiters also testified that the cleanliness and condition of their tuxedos were criteria upon which they were assigned the more lucrative work areas of the restaurant. Waiters and waitresses were required to pay for the cost of dry-cleaning jackets, trousers and shirts. Some waiters testified that they spent as much as $25.00 to $30.00 per week maintaining and cleaning their clothes. Female employees testified to spending between $3.00 to $15.00 per week for clothing maintenance.

Defendant Sliwowski, while asserting that uniforms were not required, testified that the wearing of certain clothing was "acceptable" to him and "preferred" by the employees. Although Defendant conceded at trial that he required employees to wear bow ties, he also maintained that most employees acquired their tuxedos and other formal wear from previous employment at other restaurants.

The Court is persuaded by a preponderance of the evidence presented that some type of formal wear was required to be worn by all employees, but that the particular outfit varied for males/females and bus-

---

3. Section 6(a) provides that:

Minimum Wage.
 (a) Every employer shall pay to each of his employees [covered by this statute]....
 (1) ... not less than $3.35 an hour after December 31, 1980, except as otherwise provided in this section.

Section 206(a)(1) has since been amended to read "not less than $3.35 an hour during the period ending March 31, 1990,...." 29 U.S.C.A. § 206(a)(1) (West's Supp.1992). The period for which the government seeks damages falls exclusively between the beginning date in 1980 and the ending date in 1990.
29 U.S.C.A. § 206 (West 1978).

boys/waiters. Whether by direct or indirect communication, this uniform was understood to be a condition of continued employment and dining room assignment. The Court also concludes that the cost of purchasing, replacing, and maintaining these uniforms reduced the weekly wage received by some waiters and waitresses below the lawful minimum wage.

The Secretary correctly seeks compensation to raise the weekly wages of employees to the minimum rate required by the Act. However, in determining the reasonable cost of the uniform Defendant Sliwowski required his employees to wear, the Court will not recognize costs that are extravagant or unnecessary. That is, expenditures for items either exceeding the uniform required or unreasonable in cost will not be reimbursed. Further, the Court will not award damages for uniform or maintenance costs that are inconsistent with other, more credible evidence. For every testifying employee, the Court has made difficult individual determinations, based on facts in the record, as to reasonable costs and the credibility of the evidence. Having examined the complete record and noted the wide variation in uniform expenses, the Court has decided to establish limits on the costs of expenses incurred by employees. In determining the amount owed to testifying employees, damages for uniform costs will not be awarded in excess of $150.00 for tuxedos, $27.50 for shirts, $19.00 for tie-cummerbund sets, and $18.00 per week for maintenance. Further, claims for extra or replacement items will be limited to one tuxedo, three shirts, and one tie-cummerbund set for every six months of employment.

Based on all of the evidence in the record, the Court has also determined the reasonable costs of uniform purchases and maintenance for non-testifying employees. The Court accepts the Secretary's division of employees by gender because a different type of uniform was required for men than for women.

The standard damages to be awarded to non-testifying employees, except where an alternative amount can be substantially proven by evidence in the record, shall be $194.00 for waiters and $70.00 for waitresses for the cost of uniforms, and $15.00 for waiters and $9.00 for waitresses for the cost of maintenance. Specific damages for minimum wage violations for testifying and non-testifying employees are set forth in the Specific Findings of Fact and in Appendix A of this Memorandum.

### C. Overtime

Section 7(a)(1) of the Act requires employers to pay employees who have worked in excess of forty hours per week overtime compensation equivalent to one and one-half times the employees' regular hourly rate of pay. 29 U.S.C. § 207(a)(1).[4] The Secretary seeks damages in the amount of one-half the minimum wage for each overtime hour an employee worked. This amount represents the balance due to the employee assuming that the minimum hourly wage has been paid to the employee for overtime hours as well as regular hours. The Secretary has calculated back wages in the amount of $1.67½ per each overtime hour, or one-half the minimum wage rate of $3.35 per hour.

Testimony at trial indicates that waiters would work four to seven restaurant shifts per week, with each shift lasting approximately eight to twelve hours. Twenty of the employees employed before 1989 testified that they worked in excess of forty hours per week. Thirteen of these employees testified that they worked in excess of sixty hours per week.

Generally, waiters were paid on an hourly basis for their first forty hours of work, and (if further paid) were paid per shift thereafter. Thus, waiters received $2.01 per hour for working the first forty hours, and occasionally received a cash amount between

---

4. Section 7 provides that:
 (a)(1) Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production goods for commerce for a workweek longer than forty hours, unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.
 29 U.S.C.A. § 207 (West 1978).

$10.00–$30.00 from Defendant Sliwowski for working an overtime shift. The Court finds that the amount paid to employees for overtime shifts was not equivalent to one and one-half the minimum wage rate. Even assuming that employees were paid at least $2.01 for every hour of work (whether below or above forty hours), one-half the minimum hourly wage is still owed to employees for each overtime hour worked. Therefore, the Court has awarded overtime damages for waiters at a rate of $1.67½ per hour for each overtime hour worked per week. Specific overtime damages for testifying employees are set forth in the Specific Findings of Fact and in Appendix A of this Memorandum.

Four of the former employees testifying were women. Of the four women employees who testified at trial, two testified that they had worked overtime in the amount of five and ten hours per week. Women were not permitted to wait tables at night. Waitresses mainly worked during lunch and occasionally bussed tables during dinner. The Secretary has sought no overtime damages on behalf of Defendant's non-testifying female employees.

Based on the testimony at trial, there is substantial evidence from which the Court infers that male employees were required to work an average of sixty hours per week or two overtime shifts per week. Accordingly, non-testifying waiters have been awarded an overtime amount based on an average work week including two overtime shifts, or twenty overtime hours. With regard to non-testifying female employees, the testimony and other evidence is substantially lacking and does not permit an inference of overtime work. Specific overtime damages for non-testifying employees are set forth in Appendix A of this Memorandum.

The evidence has established that Defendants' employees were not paid for overtime as required by the Act and that the sum of the non-payment for overtime totals $22,-788.73 for testifying employees, and $52,-653.64 for non-testifying employees.

## D. Records

■ Section 11(c) of the Act requires that "every employer ... shall make, keep, and preserve such records of the persons employed by him and of the wages, hours, and other conditions and practices of employment maintained by him,...." 29 U.S.C.A. § 211(c) (West 1978).[5] An employer's failure to keep records in accordance with Section 11(c) is unlawful under the Act. 29 U.S.C.A. § 215(a)(5) (West 1978). 29 C.F.R. Part 516 requires, *inter alia*, that employers preserve, for three years, records of (1) the total daily and weekly hours employees work; (2) employees' regular hourly rates of pay for each week that overtime is worked; (3) the total daily or weekly straight time earnings; and (4) the total weekly premium pay for overtime hours. *See* 29 C.F.R. §§ 516.2, 516.5 (1991).

The testimony of numerous witnesses revealed that Defendant Sliwowski had an established practice of recording the first forty hours an employee worked by having the employee punch a time card at the beginning and end of a work shift. However, these time cards were then taken away from the employees, and no further records of an employee's hours were kept.

Defendants have presented no convincing evidence that employees were properly compensated for these overtime hours and in fact have no records sufficiently detailed to indicate that such an attempt was made before 1987. Defendants' failure to maintain records is demonstrated by their inability to offer any evidence at trial that clearly and accurately shows the number of hours each employee worked and the rate of pay that was applicable. However, the Court notes that since 1987, Defendants have attempted to keep some records and remunerate some

---

**5.** Section 11(c) provides in full that:

Every employer subject to any provision of this chapter or of any order issued under this chapter shall make, keep, and preserve such records of the persons employed by him and of the wages, hours, and other conditions and practices of employment maintained by him, and shall preserve such records for such periods of time, and shall make such reports therefrom to the Administrator as he shall prescribe by regulation or order as necessary or appropriate for the enforcement of the provision of this chapter or the regulation or orders thereunder.

29 U.S.C.A. § 211(c) (West 1978).

of their employees' expenses. Nevertheless, based on the evidence at trial, the Court finds that Defendants knowingly and willfully failed to keep records in accordance with the requirements of Section 11(c) of the Act.

## E. Tip Credit

Section 3(m) of the Act permits an employer to claim a tip credit. *See* 29 U.S.C.A. § 203(m) (West 1978).[6] This means that in computing the minimum wage to be paid to an employee, an employer can reduce the employee's hourly wage by an amount "not ... in excess of 40 per centum of the applicable minimum wage."[7] 29 U.S.C. § 203(m) (1982). Congress has made clear that such a tip credit "shall not apply with respect to any tipped employee unless (1) such employee has been informed" that the employer is taking the credit, and (2) the employee actually retains all the tips he or she has received (unless pooled with other tipped employees). *See* 29 U.S.C.A. § 203(m) (West 1978).

▆▆▆ The notice provision requires the Court to find "at the very least notice to employees of the employer's intention to treat tips as satisfying part of the employer's minimum wage obligations." *Martin v. Tango's Restaurant, Inc.*, 969 F.2d 1319, 1322 (1st Cir.1992). In *Martin v. Tango's Restaurant, Inc.*, the district court made a finding, based on inference, that the notice requirement had been met even though the employees testified at trial that they were never told that the employer was taking a tip credit, nor that it would reduce the minimum wage the employer was obligated to pay to them. *Id.*

The First Circuit reversed the district court's decision as being "clearly erroneous." *Id.* at 1323. In light of *Tango's*, the Court finds that Section 3(m) requires three conditions to be met before an employer can lawfully reduce the amount paid to an employee by a tip credit: (1) The employer must inform each employee that a minimum wage is required by law. (2) The employer must inform each employee of the dollar amount of the minimum wage. And (3), The employee must actually keep the tips he or she receives.

In *Tango's*, as in the case at bar, the compliance officer had allowed the employer to claim a tip credit. However, on appeal the Secretary argued that this allowance was tentative because it was made prior to the employees' trial testimony. Although the First Circuit did not explicitly agree with the Secretary's claim that the original allowance of the tip credit was tentative, it refused to grant the tip credit deduction from back wages since the notice requirement had not been properly satisfied. *Id.*

▆▆▆ In the case at bar, the applicable minimum wage for the period during which the Secretary seeks damages is $3.35 per hour.[8] *See* 29 U.S.C.A. § 206(a)(1) (West 1978). Defendants have assumed a tip credit of 40% of the minimum wage ($1.34), the maximum amount under law, for each hour an employee worked, and have paid their employees at a rate of $2.01 per hour. Defendants' tip credit deduction was not challenged by the federal investigating officers who informed Defendant Sliwowski about other violations of the Act prior to the com-

---

**6.** Section 3(m) provides that:

.... In determining the wage of a tipped employee, the amount paid such employee by his employer shall be deemed to be increased on account of tips by an amount determined by the employer, but not by an amount in excess of 40 per centum of the applicable minimum wage rate, except that the amount of increase on account of tips determined by the employer may not exceed the value of tips actually received by the employee. The previous sentence shall not apply with respect to any tipped employee unless (1) such employee has been informed by the employer of the provisions of this subsection, and (2) all tips received by such employee have been retained by the employee, except that this subsection shall not be construed to prohibit the pool-

ing of tips among employees who customarily and regularly receive tips.
29 U.S.C. § 203 (1982).

**7.** A 1989 amendment increased the tip credit allowance to 45% as of April 1, 1990 and to 50% as of March 31, 1991. 29 U.S.C.A. § 203(m) (West Supp.1992). However, for the period of this suit, the tip credit allowance remains consistent at 40% of the applicable minimum wage. 29 U.S.C. § 203(m) (1978).

**8.** *See* 29 U.S.C.A. § 206(a)(1) (West Supp.1992). An established minimum wage of $3.35 existed for a period of ten years beginning December 31, 1980 and ending March 31, 1990. The damages sought by the Secretary exclusively cover dates within this ten year period.

mencement of this action. However, the Secretary contends that Defendants are not entitled to any tip credit since the notice requirement of Section 3(m) was never properly satisfied.

The Court agrees with the Secretary. Although Chez Robert's employees received and kept practically all of their tips, the testimony indicates that the notice requirement was not properly satisfied. Employees testified that when hired, they were informed that they would be paid $2.01 per hour. However, at no time was it explained to employees that the minimum wage was in fact $3.35 per hour, and that the actual hourly wage to be paid was the result of a deduction allowed by law when tips supplement the reduced wage rate. A tip credit deduction is therefore inappropriate in this case. Therefore, the computation of back wages owed to employees must include a rate of $1.34 for every hour worked.[9] "If the penalty for omitting notice appears harsh, it is also true that notice is not difficult for the employer to provide." *Tango's,* 969 F.2d at 1323. Damages for improper tip credit deductions are set forth in the Specific Findings of Fact and in Appendix B of this Memorandum.

### F. Meal Credits

An employer may claim a meal credit deduction for the meals he provides his employees at work; however, a meal credit may be taken only if the employee is given a break of at least thirty minutes, and the employee is required to perform no work-related functions during this break. *See* 29 C.F.R. § 785.19(a) (1991).[10] A shorter period may be long enough under special conditions. *Id.* The federal regulations state that rest periods running from "about 5 minutes to about 20 minutes.... **must be counted as hours worked.** Compensable time of rest periods may not be offset against other working time...." 29 C.F.R. § 785.18 (1991) (emphasis added).

When meals or other services are provided by an employer, the reasonable cost of the meals may be deducted from the amount of back wages due to the employee under the Act. *Donovan v. The New Floridian Hotel, Inc.,* 676 F.2d 468, 474 (11th Cir. 1982). The employer has the burden of showing the reasonable cost of such deductions. *Id.* at 474, 475 n. 12. Part of this burden includes complying with the appropriate regulations promulgated by the Secretary. *See Donovan v. I & J Inc.,* 567 F.Supp. 93, 109–10 (D.N.M.1983). These regulations require employers to keep records as to the cost incurred in furnishing meals and other services. *See* 29 C.F.R. § 516.27(a) (1991). An employer must also maintain, on a work week basis, records reflecting additions or deductions from wages for services such as meals. *Id.* at § 516.-28(b); *see also New Floridian Hotel,* 676 F.2d at 474.

Defendants allege that employees were provided with a meal period of at least one hour per shift. During this one-hour meal period, the employees did not perform any work-related duties. Defendants also claim that, except for certain limited items, employees were permitted to serve themselves from a buffet which Defendants provided. It is unclear from Defendants' pretrial and post-trial memoranda whether they seek to deduct from employee wages the costs incurred from providing employees'

---

**9.** The Court will compensate for improper tip credit deductions based on the following formula: (total number of weeks for which the Secretary seeks damages) × (total number of hours worked per week × 1.34). For example, remuneration for an employee who worked an average of 50 hours a week for a period of 10 weeks would be calculated as 10 × (50 × 1.34) = $670.00 tip credit owed.

**10.** Section 785.19 provides that:
Bona fide meal periods. Bona fide meal periods are not work time. Bona fide meal periods do not include coffee breaks or time for

snacks. These are rest periods. The employee must be completely relieved from duty for the purposes of eating regular meals. Ordinarily 30 minutes or more is long enough for a bona fide meal period. A shorter period may be long enough under special conditions. The employee is not required to perform any duties, whether active or inactive, while eating. For example, an office employee who is required to eat at his desk or a factory worker who is required to be at his machine is working while eating.
29 C.F.R. § 785.19(a) (1991).

.meals, or reduce the amount of time the employees were given as their meal break from their total weekly work hours. ·

In either case, Defendants' claim of a meal credit is unsupported in the evidence. Defendants provided no records showing the reasonable cost of the meals which they seek to deduct. The Administrator of the Wage and Hour Division made no determination of the reasonable cost of these meals, nor does the record reflect any such request by Defendants.

In addition, testimony by numerous employees indicates that the average amount of time given for meals was 10–15 minutes, considerably less than the time required to claim a meal credit. Defendants make no claim that any "special considerations" apply nor does the Court find any special considerations are warranted. Most of the waiters testified at trial that they were allowed to eat buffet leftovers, often dining by leaning on counters or sitting on milk crates. The length and quality of this meal "break" is analogous to the worker who stays at his or her machine or the worker who eats at his or her desk. *See* C.F.R. § 785.19 (1991). In these examples as in the case at bar, no meal credit offset is justified.

### III. Computation of Back Wages

The minimum wage for overtime hours worked is equal to time ($3.35) plus one-half ($1.67½). *See* 29 U.S.C.A. § 206(a) (West 1978). In computing overtime, the Secretary assumes that each employee received at least $2.01 an hour. The $2.01 amount is the minimum wage rate for regular hours worked if a 40% tip credit deduction is properly taken by the employer. *See* 29 U.S.C.A. § 203(m) (West 1978). Assuming that a tip credit deduction was properly taken by Defendants, $2.01 per hour would be equivalent to the statutory minimum wage of $3.35 per hour. Under this scenario, an employee who had been compensated for uniform and maintenance expenditures would be receiving the correct minimum wage rate for the first forty hours of work. However, for the hours worked in excess of forty hours, an employee would still be owed one-half, $1.67½, the statutory amount of $3.35 per hour. Therefore, since the Secretary assumes that each employee at Chez Robert was paid $2.01 per hour, for *every* hour, a balance of $1.67½ is owed by Defendants to employees for every hour worked in excess of forty hours.

For example, the Secretary seeks damages for Todd Black to cover a period of twelve weeks with an average of fifty hours worked per week. That is, during twelve weeks of work, Mr. Black worked forty regular hours plus ten additional, overtime hours. Using the Secretary's method for determining overtime, damages would be calculated as follows:

$$12 \times (10 \times 1.67\frac{1}{2}) = \$201.00 \text{ in overtime hours}$$

Uniform purchases, uniform maintenance expenses, and first day payment would then be added to the $201.00 in overtime to arrive at a total amount of back wages owed to an employee.

But the Secretary simultaneously argues that a tip credit deduction does *not* apply. The Secretary suggests that the tip credit provisions in Section 3(m) of the Act were not followed by Defendants, and therefore such a deduction should not be allowed. If the Court accepted this argument, then Defendants' payment of $2.01 per hour to employees was never lawful. As a result, $1.34 (the tip credit deduction) must be added to the wages of *every* hour worked in order to equal the $3.35 per hour employees *should have* been paid. This includes both the regular forty hours plus the wages for every overtime hour worked.

Therefore for Mr. Black, remuneration for improper tip credit deductions would be calculated as follows:

$$12 \times (50 \times 1.34) = \$804.00 \text{ tip credit owed}$$

The $804.00 in tip credit deductions would then be added to the total back wages calculated for Mr. Black to determine the total amount that Defendants owe Mr. Black.

The Court has accepted both of these computations as appropriate and accurate formulas to be used in this case, with one minor exception. A number of testifying employees claim that they received no pay for their first day of work. The Secretary has calculated that each of these individuals is owed $3.35 an hour for their first unpaid, twelve hour shift, or $40.20. In computing tip credit amounts, however, the Court presumes that

the first day of work has been included. Therefore, since $1.34 per hour has already been computed for the first day, the employee making the claim is only owed $2.01 an hour for his first twelve hour shift, or $24.12.

## IV. Specific Findings of Fact

Twenty-three former employees testified at trial to having worked for Defendants between June 1984 and December 1989. The Secretary has submitted evidence primarily in the form of lotus spreadsheets, wage and hour forms, and the testimony of former employees. Defendants have sought to use this same evidence in addition to Defendant Sliwowski's own testimony to rebut the Secretary's claims. Both parties have presented different proposed findings of fact for each testifying employee. Each side suggests not only that its calculations more accurately reflect the actual damages owed to each testifying employee, but also that the approximations for non-testifying employees should be based on its conclusions. The Court has weighed the evidence presented and has made the following findings for the twenty-six testifying employees.

Todd Black: Damages cover a period of twelve weeks, with an undisputed average of ten overtime hours per week. The Secretary seeks remuneration for uniform expenses in the amount of $442.00. Defendants contend only $180.00 should be allowed. Based on Mr. Black's admissions at trial, uniform damages are awarded in the amount of $365.00.[11] (*See* Tr. at 6.6.) Expenses for uniform maintenance are claimed and will be awarded at $9.50 per week. Compensation for the first unpaid work day in the amount of $24.12 is also added. Actual damages for Todd Black are awarded in the amount of $704.12. Additional remuneration for tip credit deductions equal $804.00. The total amount owed to Mr. Black is $1,508.12.[12]

Gregory Brown: Damages cover a period of eighty weeks, with an undisputed average of twenty overtime hours per week. The Secretary seeks remuneration for uniform expenses in the amount of $1,095.00. Because Mr. Brown previously claimed on Wage and Hour forms that shirts cost him $25.00, not $30.00, Defendants claim the amount awarded for each shirt should be reduced by $5.00. The Court will adopt the Defendants' position, and $50.00 is deducted for the purchase of ten shirts. Therefore, uniform damages are awarded in the amount of $1045.00. Expenses for uniform maintenance are capped at $18.00 per week. Compensation for the first unpaid work day is also added. Actual damages for Gregory Brown are found in the amount of $5,189.12. Additional remuneration for tip credit deduc-

---

**11.** As explained in Section II(B), the Court has set the following caps for uniform and maintenance costs to compensate for extravagant or unnecessary expenses: In determining the amount owed to testifying employees, damages for uniform costs will not be awarded in excess of $150.00 for tuxedos, $27.50 for shirts, $19.00 for tie-cummerbund sets, and $18.00 per week for maintenance. Claims for extra or replacement items will be limited to one tuxedo, three shirts, and one tie-cummerbund set for every six months of employment.

In addition, uniform costs are divided into two categories in Appendix A. One column lists the amount awarded for an employee's *initial* uniform purchase. The next column lists the amount awarded for an employee's *replacement* uniform purchases. To avoid unnecessary complication, the amount for uniform costs set forth in the Specific Findings of Fact, reflects the total amount—initial costs plus replacement costs—for uniform purchases by an employee.

**12.** Damages for Black were calculated as follows:

Actual damages (itemized):

| | | | |
|---|---|---|---|
| Overtime | $201.00 | or | $12 \times (10 \times 1.67\frac{1}{2})$ |
| Uniform costs | 365.00 | | |
| Maintenance | 114.00 | or | $12 \times 9.50$ |
| First day | 24.12 | | |
| Actual damages (total) | $704.12 | | |
| Tip Credit | 804.00 | or | $12 \times (50 \times 1.34)$ |
| Total amount owed | $1,508.12 | | |

tions equal $6,432.00. The total amount owed to Mr. Brown is $11,621.12.

Kourosh Askari: The Secretary seeks damages for fifty-three weeks, with an average of forty-five overtime hours per week. However, the Secretary also alleges that damages for Mr. Askari cover the period between June 6 1984 and December 1984. (See Pl.'s Ex. 20.) Therefore, the Court agrees with Defendants' argument that the amount of time for which damages are sought is thirty, not fifty-three, weeks. Also, based on Mr. Askari's testimony at trial, he worked an average of thirty-five hours of overtime per week. (See Tr. at 1.208.) The Court agrees with Defendants and finds that damages cover a period of thirty weeks, with an average of thirty-five overtime hours per week. The Secretary seeks remuneration for uniform expenses in the amount of $1,160.00. Defendants claim that $435.00 should be deducted from this amount because of Mr. Askari's prior claims on Wage and Hour forms. The Court agrees in part with Defendants and has also capped damages. Therefore, uniform damages are awarded in the amount of $628.00. Expenses for uniform maintenance are awarded at $16.80 per week. Compensation for the first unpaid work day is also added. Actual damages for Kourosh Askari are awarded in the amount of $2,914.87. Additional remuneration for tip credit deductions equal $3,015.00. The total amount owed to Mr. Askari is $5,929.87.

The Secretary seeks damages for Michael Deighan as a testifying witness. Although his written testimony was admitted into the record pursuant to Fed.R.Evid. 801(d)(2)(D), Mr. Deighan did not testify at trial. Therefore, the Court will accept Mr. Deighan's testimony for the purpose of finding Defendants' in violation of the Act. However, the Court will not treat Mr. Deighan as a testifying witness when awarding damages. The Secretary may claim damages for Michael Deighan, but only as a non-testifying witness.

Larry Devine: The Secretary seeks damages for one hundred six weeks, with an undisputed average of twenty-five and one-half overtime hours per week for seventy-six weeks. Defendants claim that damages should only cover a period of fifty-one weeks since Mr. Devine admitted at trial that he did not work in 1985. (See Tr. at 2.156.) Based on Mr. Devine's testimony at trial and other evidence presented by the Secretary, the Court finds that Devine did not work in 1985, but did work for Defendants for at least a period of seventy-six weeks. The Secretary seeks remuneration for uniform expenses in the amount of $1,010.00. Defendants claim Mr. Devine should only receive the $461.00 that he previously claimed on Wage and Hour forms. However, Defendants fail to consider Mr. Devine's employment after 1986. Therefore, the Court will cap Mr. Devine's uniform damages at $518.50. Based on Mr. Devine's testimony at trial, expenses for uniform maintenance over a five year period are awarded at an average of $11.00 per week. (See Tr. at 2.165–66.) No compensation for the first work day is sought. Actual damages for Larry Devine are found in the amount of $4,600.65. Additional remuneration for tip credit deductions equal $6,670.52. The total amount owed to Mr. Devine is $11,271.17.

Charles Hertzog: Damages cover a period of twenty weeks, with an average of twenty-two and one-half overtime hours per week. The Secretary seeks remuneration for uniform expenses in the amount of $315.00. Defendants claim only $189.50 should be allowed. Based on Mr. Hertzog's admissions at trial, uniform damages are awarded in the amount of $189.50. (See Tr. at 1.130.) Expenses for uniform maintenance are awarded at $4.57½ per week pursuant to his claim. Compensation for the first unpaid work day in the amount of $24.12 is also added. Actual damages for Charles Hertzog are found in the amount of $1,058.87. Additional remuneration for tip credit deductions equal $1,675.00. The total amount owed to Mr. Hertzog is $2,733.87.

John Hill: The Secretary seeks damages for four weeks, with an average of twenty-six overtime hours per week. Defendants claim Mr. Hill was only employed by them for one week. However, Mr. Hill established at trial that he was employed by Defendants for at least four weeks. (Tr. at 3.134.) The Secre-

tary seeks remuneration for uniform expenses in the amount of $260.00. The Court has capped the amount reimbursed for uniform expenses at $210.00. Expenses for uniform maintenance will be awarded as claimed, at $12.00 per week. Compensation for the first unpaid work day in the amount of $24.12 is also added. Actual damages for John Hill are found in the amount of $456.32. Additional remuneration for tip credit deductions equal $353.76. The total amount owed to Mr. Hill is $810.08.

Jim Johnson: The Secretary seeks damages for forty-four weeks, with an undisputed average of thirty overtime hours per week. Defendants claim, and the Secretary does not dispute, that the restaurant was closed for two of these weeks. Based on the evidence presented at trial, the Court finds damages are appropriate for a period of forty-two weeks. Uniform expenses are capped at $417.50. Expenses for uniform maintenance are allowed at $15.00 per week based on Mr. Johnson's testimony at trial. (*See* Tr. at 2.130.) No compensation for the first work day is sought. Actual damages for Mr. Johnson are found in the amount of $3,158.00. Additional remuneration for tip credit deductions equal $3,939.60. The total amount owed to Mr. Johnson is $7,097.60.

Wayne Kenney: Damages cover a period of six weeks in 1985, with an average of thirty-eight overtime hours per week. The Secretary seeks remuneration for uniform expenses in the amount of $75.00 for an initial purchase, and $630.00 for subsequent purchases. The Court finds this amount unreasonable for the six week period and accepts Defendants' figure of $160.00 based on Mr. Kenney's testimony at trial. (*See* Tr. at 6.31.) Expenses for uniform maintenance are claimed at $18.00 per week. No compensation for the first work day is sought. Actual damages for Wayne Kenney are found in the amount of $649.90. Additional remuneration for tip credit deductions equal $627.12. The total amount owed to Mr. Kenney is $1,277.02.

Aladin Mahmoud: Damages cover a period of ninety-six weeks, with an average of twenty-five overtime hours per week. The Secretary seeks remuneration for uniform ex-

penses in the amount of $1,084.00. Defendants claim Mr. Mahmoud is owed only $575.00. Based on Mr. Mahmoud's testimony at trial and the established expense limitations, the Court finds uniform costs in the amount of $809.00. Expenses for uniform maintenance are claimed and awarded at $18.00 per week. Compensation for the first unpaid work day in the amount of $24.12 is also added. Actual damages for Aladin Mahmoud are found in the amount of $6,581.12. Additional remuneration for tip credit deductions equal $8,361.60. The total amount owed to Mr. Mahmoud is $14,942.72.

John Mannino: Damages cover a period of thirty-two weeks, with an average of thirty-three overtime hours per week. The Court finds uniform costs in the amount of $150.00. Expenses for uniform maintenance are capped at $18.00 per week. Compensation for the first unpaid work day in the amount of $24.12 is also added. Actual damages for John Mannino are found in the amount of $2,518.92. Additional remuneration for tip credit deductions equal $3,130.24. The total amount owed to Mr. Mannino is $5,649.16.

Ralph Palladino: The Secretary seeks damages for thirty-six weeks, with an average of twenty overtime hours per week. Based on Plaintiff's own calculation, the Court accepts Defendants' claim that damages should only be awarded for a period of thirty weeks. The Court finds uniform costs in the amount of $415.00. Based on his testimony at trial, Mr. Palladino's expenses for uniform maintenance were $11.00 per week. (*See* Tr. at 2.88.) Compensation for the first unpaid work day in the amount of $24.12 is also added. Actual damages for Ralph Palladino are found in the amount of $1,774.12. Additional remuneration for tip credit deductions equal $2,412.00. The total amount owed to Mr. Palladino is $4,186.12.

Lenny Passwaters: The Secretary seeks damages for eight weeks between May and July 1987, with an average of twenty overtime hours per week. Defendants claim Mr. Passwaters is entitled to only 4.3 weeks of back wages. The Court disagrees with both positions. Based on his testimony at trial

and Plaintiff's own exhibits, the Court finds that Lenny Passwaters worked no more than six weeks. (*See* Tr. at 5.75.) The Secretary seeks $215.00 in uniform expenses. However, Mr. Passwaters conceded at trial that he did not buy any clothing while working at Chez Robert. (*See* Tr. at 5.88.) Expenses for uniform maintenance are awarded as claimed at $11.00 per week. Compensation for the first unpaid work day in the amount of $24.12 is also added. Actual damages for Lenny Passwaters are found in the amount of $291.12. Remuneration for tip credit deductions equal $482.40. The total amount owed to Mr. Passwaters is $773.52.

Robert Settimio: The Secretary seeks damages for seventeen weeks, but seeks no back wages for overtime. Based on Plaintiff's exhibits, the Court accepts Defendants' claim that damages should only be awarded for a period of eleven weeks. The Court finds uniform costs in the amount of $122.50. Mr. Settimio's expenses for uniform maintenance are capped at $18.00 per week. Compensation for the first unpaid work day in the amount of $16.08 is also added.[13] Actual damages for Robert Settimio are found in the amount of $340.60. Additional remuneration for tip credit deductions equal $589.60. The total amount owed Mr. Settimio is $930.20.

The Secretary seeks damages for Omerling Tellez as a testifying witness. Although his written testimony was admitted into the record pursuant to Fed.R.Evid. 801(d)(2)(D), Mr. Tellez did not testify at trial. Therefore, the Court will accept Mr. Tellez's testimony for the purpose of finding Defendants' in violation of the Act. However, the Court will not treat Mr. Tellez as a testifying witness when awarding damages. The Secretary may claim damages for Omerling Tellez, but only as a non-testifying witness.

Tony Maiken: Damages cover a twelve week period, with an average of seven overtime hours per week for seven weeks. Overtime is not claimed for the other five weeks. The Court finds uniform costs in the amount of $108.50. Expenses for uniform mainte-

nance are capped at $18.00 per week. No compensation for the first day of work is sought. Actual damages for Tony Maiken are found in the amount of $406.58. Additional remuneration for tip credit deductions equal $708.86. The total amount owed to Mr. Maiken is $1,115.44.

Daniel Pearce: Based on his testimony at trial, damages for Mr. Pearce cover a twenty-two week period, with an average of thirty-five overtime hours for five weeks, and fifteen overtime hours for seventeen weeks. (*See* Tr. at 5.53–4.) The Court finds uniform costs in the amount of $219.00. Mr. Pearce testified at trial that uniform maintenance cost him $15.00 per week. (*See* Tr. at 5.48–9.) Compensation for the first unpaid work day in the amount of $24.12 is also added. Actual damages for Daniel Pearce are found in the amount of $1,293.38. Additional remuneration for tip credit deductions equal $1,755.40. The total amount owed to Mr. Pearce is $3,048.78.

Ali Tabei: The Secretary seeks damages for forty-eight weeks, including an average of forty overtime hours per week. Defendants claim that back wages are due for thirty-seven weeks, including an average of thirty-two overtime hours per week. Based on Defendants' claim that Chez Robert was closed for part of the period Mr. Tabei worked and Mr. Tabei's testimony at trial, the Court finds that Mr. Tabei should be awarded damages for a period of forty-one weeks, with an average of thirty-six overtime hours per week. The Court agrees with the Secretary's estimate of uniform costs and awards damages in the amount of $463.00. However, the Court accepts Defendants' estimated claim of $17.70 per week for maintenance as more accurate. Actual damages for Ali Tabei are found in the amount of $3,561.00. Additional remuneration for tip credit deductions equal $4,175.44. The total amount owed to Mr. Ali is $7,836.44.

Ronald Rutkoski: The Secretary seeks damages for ninety-eight weeks, covering the years 1984–1986. Defendants claim that Chez Robert was closed for two weeks in

---

**13.** Although the normal compensation for the first unpaid day is $24.12, Settimio testified at trial that he only worked for eight to nine hours. Thus, $2.01 × 8 = $16.08. (Tr. at 5.101.)

August 1984 and two weeks in August 1985. The Court finds that damages should be awarded for ninety-four weeks. The Court also finds that an average of five hours of overtime were worked during sixteen of those weeks. Based on the testimony of Mr. Rutkoski and the established caps for uniform expenses, the Court finds uniform purchases in the amount of $430.00. (*See* Tr. at 5.13.) Mr. Rutkoski also testified at trial that he spent $15.00 per week on maintenance. (*See* Tr. at 5.14.) Actual damages for Ronald Rutkoski are found in the amount of $1,998.12. Additional remuneration for tip credit deductions equal $5,145.60. The total amount owed to Mr. Rutkoski is $7,143.72.

Armand Scavo: The Secretary seeks damages for Mr. Scavo from February 1 to March 29, 1987, or for approximately two months. Based on these dates, damages should be awarded for a period of not more than 8.6 weeks. The average overtime per week is twelve hours. Based on Mr. Scavo's testimony at trial and given the expenditure caps, uniform costs are awarded in the amount of $292.50. (*See* Tr. at 3.105.) The cap on maintenance costs limits Mr. Scavo to $18.00 per week. Actual damages for Armand Scavo are found in the amount of $644.28. Additional remuneration for tip credit deductions equal $599.25. The total amount owed to Mr. Scavo is $1,243.53.

Joe Massara: Damages cover a period of not more than nineteen weeks, with an average of nineteen overtime hours per week. Based on Mr. Scavo's own testimony at trial, uniform costs did not exceed $200.00. (*See* Tr. at 4.6.) Mr. Massara claims $18.00 per week in maintenance. Actual damages for Joe Massara are found in the amount of $1,170.80. Additional remuneration for tip credit deductions equal $1,502.14. The total amount owed to Mr. Massara is $2,672.94.

Diane Steskal: Damages cover a period of seven weeks. No overtime was worked. Ms. Steskal's uniform costs were $65.00, and she spent $3.00 per week in maintenance. Actual damages for Diane Steskal are found in the amount of $86.00. Additional remuneration for tip credit deductions equal $375.20. The total amount owed to Ms. Steskal is $461.20.

Roberta Konrad (a.k.a. Roberta Lynch): Damages cover a period of sixteen weeks, with an average of ten overtime hours per week. Ms. Konrad's uniform costs were at least $215.00, and she spent $8.50 per week in maintenance. Actual damages for Roberta Konrad are found in the amount of $619.00. Additional remuneration for tip credit deductions equal $1,072.00. The total amount owed to Ms. Konrad is $1,691.00.

Nina Hodoruk: Damages cover a period of two weeks, with an average of thirty-two regular hours per week. Despite the Secretary's request for $44.00 in uniform expenses, Ms. Hodoruk admitted at trial that she spent no money for any part of her uniform and had no cleaning expenses. (*See* Tr. at 4.129–30.) No actual damages are found for Nina Hodoruk. Remuneration for tip credit deductions equal $85.76. The total amount owed to Ms. Hodoruk is $85.76.

Gwen Kron (a.k.a. Gwen Steedle): Damages cover a period of four weeks, with an average of five hours overtime per week. Ms. Kron's uniform costs were $70.00. Although the Secretary seeks $15.00 per week in maintenance, Ms. Kron testified at trial to having spent an average of $6.00 per week. (*See* Tr. at 4.99.) Therefore, expenses for maintenance costs are awarded at $6.00 per week. Actual damages for Gwen Kron are found in the amount of $127.50. Additional remuneration for tip credit deductions equal $241.20. The total amount owed to Ms. Kron is $368.70.

Michael Campbell and Robert Schiavo both testified about their employment at Chez Robert after 1989. The Secretary has not requested any damages for Mr. Campbell or Mr. Schiavo in this action.

Greg Norman Layer, though employed by Defendants during part of the relevant period, testified at trial as to his employment at Chez Robert in 1990. The Secretary seeks damages for Mr. Layer only as a non-testifying employee for his employment prior to 1989.

The overtime damages for all testifying employee is $22,788.73. This figure is then

added to the uniform and maintenance costs for all testifying employees. The sum, $40,-240.37, is the amount due in actual damages to all of Defendants' testifying employees. Additional remunerations for improper tip credit deductions are owed in the sum of $54,175.13. The total for actual damages plus the total for tip credit remunerations equal $94,415.50, or the grand total amount of back wages owed to testifying employees. The calculations underlying these conclusions are also set forth in the Sections of Appendices A and B calculating total damages and tip credit remunerations for testifying employees.

### V. Representative Testimony

The district court must "estimate and fashion a reasonable remedy that restores as fully as possible all of the employees covered by FLSA [the Act] who were improperly denied compensation" even where the records are deficient. *McLaughlin v. DialAmerica*, 716 F.Supp. at 825 (citing *Brock v. Tony & Susan Alamo Foundation*, 842 F.2d 1018, 1019 (1988)). Although testimony may be required to show that an employer violated the Act and that remuneration to employees is due, it is not imperative that every employee testify in order for the court to recognize his or her claim. *McLaughlin v. DialAmerica*, 716 F.Supp. at 824. Furthermore, " ... the fact that several employees do not testify does not vitiate their claim[s]." *Id.* A court may determine damages to non-testifying employees as a matter of "just and reasonable inference" if it finds, based upon the testimony given, that the work habits of those non-testifying employees were sufficiently similar to testifying employees. *See id.* at .824, 825 (citing *Donovan v. New Floridian Hotel*, 676 F.2d at 472); *Anderson*, 328 U.S. at 687, 66 S.Ct. at 1192.

Defendants note that damages for non-testifying as well as testifying employees may be inferred when a court finds that certain circumstances exist. Representative testimony has been accepted in cases where (1) there is substantial other evidence to support an inference drawn from representative testimony, (2) the employer has systematically caused records to be falsified that would otherwise be properly maintained, or (3) the Secretary establishes a uniform pattern or practice of wage methods, conditions, and hours encompassing a class of employees. *See McLaughlin v. DialAmerica*, 716 F.Supp. at 824. However, the Defendant may rebut the reasonableness of any inferences which may be drawn by the testimony of witnesses. *Id.* at 824–25.

It is the finding of this Court that, based upon the testimony at trial, the "work habits of non-testifying witnesses were sufficiently similar to testifying witnesses." *McLaughlin v. DialAmerica*, 716 F.Supp. at 825. The testimony presented allows the Court to draw reasonable inferences with regard to non-testifying employees at Chez Robert. These inferences include the manner and amount of payment to employees, the number of hours employees worked, and the employees' costs for uniforms and maintenance.

Based on the testimony of twenty-eight of Defendants' employees and substantial other evidence presented by the Secretary, the Court finds actual damages to non-testifying employees in the amount of $118,196.89 for the 1984–1988 period, and $19,372.40 for the 1988–1989 period. Additional remuneration to non-testifying employees for improper tip credit deductions equal $142,252.39 for the 1984–1988 period, and $33,388.11 for the 1988–1989 period. The total amount owed for all non-testifying employees is $313,-209.79. The calculations underlying these conclusions are also set forth in the Sections of Appendices A and B calculating total damages and tip credit remunerations for non-testifying employees.

### VI. Remedial Action

The Act makes it unlawful for any employer to violate any of the minimum wage or overtime provisions in Sections 206 and 207 of the Act, or to violate the record keeping provisions in Section 211(c) of the Act. *See* 29 U.S.C.A. §§ 215(a)(2) and (5) (West 1987). The term "employer" as used in the Act should be broadly interpreted.

*See United States v. Rosenwasser,* 323 U.S. 360, 363 n. 3, 65 S.Ct. 295, 296 n. 3, 89 L.Ed. 301 (1945). Employers are defined as the corporate officer who possess authority over daily operations, and the corporation. Both are jointly and severally liable under the Act for unpaid wages. *Donovan v. Agnew,* 712 F.2d 1509, 1511 (1st Cir.1983). Furthermore, any such corporate officer is liable in his or her individual, not representative, capacity. *Donovan v. Grim Hotel Company,* 747 F.2d 966, 971 (5th Cir.1984).

▮ Defendant Robert Sliwowski was the chef, owner and principal operator of Chez Robert. Mr. Sliwowski held all corporate authority and personally supervised the day-to-day affairs of the restaurant's operation. The evidence has also shown that Mr. Sliwowski exercised control over the hiring and discharging of employees, and established the terms and conditions for their employment. Based on these facts, Chez Robert, Inc. and Robert Sliwowski are employers within the meaning of the statute.

Section 16(b) of the Act presents the penalties that the Secretary may seek to impose upon violators of § 206:

> Any employer who violates the provisions of section 206 ... shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation ... and in an additional equal amount as liquidated damages.

29 U.S.C.A. § 216(b) (West 1978).

The Court has determined that the amount of back wages Defendants owe to testifying and non-testifying employees is $177,809.66. Defendants also owes $229,794.19 in tip credit deductions.

However, the Secretary has made no provisions in her calculations for tips actually received by employees. Certainly no precise amount can be determined. It has been established that Defendants did not keep accurate records as to their employees' hourly wages, and cannot have been expected to have kept records for cash tips employees received directly from restaurant patrons. Chez Robert is an expensive, "upscale" restaurant and certainly capable of generating tips that would have supplemented employees' incomes to a great degree. Since the Secretary did not account for tips actually received, the Court must apply a discount rate to the damages owed to each employee.

However the variance among employees of tips actually received is problematic. For example, at trial Mr. Askari testified to receiving between $350.00 to $450.00 a week in tips during the busy season in December. He also testified to making only $300.00 a week in tips during the slower months. Waitresses and busboys made less in tips, but were probably equally affected by the seasonal nature of the restaurant business. Even within Chez Robert, trial testimony indicates that the favored waiters were assigned the busier, more profitable front dining room, while other waiters were assigned to a back dining room. One witness claimed that the back room was nicknamed "Siberia." Despite differences between employees, the tips employees received supplemented weekly income and had the potential to significantly reduce the amount that employees were underpaid.

The Court has adjusted Defendants' liability to account for this inflating factor. The $177,809.66 in actual damages and the $229,794.19 in tip credit remunerations will be reduced by 25%. Therefore, after discounting, Defendants' are obligated to pay total damages, actual and tip credit, in the amount of $305,702.88.

▮ The Secretary further claims that Defendants' violation of Section 11(c) was willful, and requests that damages be permitted to extend to three years prior to the filing of this action. The Portal–to–Portal Act of 1947 places a two year statute of limitations on wage claims, unless the violation is found to be willful. *See* 29 U.S.C.A. § 255(a) (West 1978).[14] Willful violations extend the recovery period for back wages to three years. The Supreme Court has recognized a willful violation of the Act when "the

14. Section 255 provides in part that:
Any action commenced ...

(a) ... may be commenced within two years after the cause of action accrued, and every

employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by statute." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133, 108 S.Ct. 1677, 1681, 100 L.Ed.2d 115 (1988). Willfulness has also been found to be synonymous with the terms "voluntary," "deliberate," and "intentional." *Id.; see also Dole v. Haulaway, Inc.*, 723 F.Supp. 274 (D.N.J. 1989), *aff'd without opp.*, 914 F.2d 242 (3d Cir.1990), *cert. denied,* — U.S. —, 111 S.Ct. 1388, 113 L.Ed.2d 445 (1991). In particular, Justice Stevens, delivering the Opinion of the Court, said,

> " 'it would be virtually impossible for an employer to show that he was unaware of the Act and its potential applicability'.... the normal 2–year statute of limitations would seem to apply only to ignorant employers, surely not a state of affairs intended by Congress."

*McLaughlin v. Richland Shoe*, 486 U.S. at 133 (citing *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 128, 105 S.Ct. 613, 625, 83 L.Ed.2d 523 (1985)).

Defendants claim that time records were kept and thus the purpose and intent of the Act was satisfied. The Court disagrees. The intent of the statute implicitly includes the requirement that a defendant accurately record or make a good faith attempt at accuracy. Defendants' record keeping permits no such inference. Based on the evidence, the Court concludes that Defendants' violation of the Act's record keeping requirements was voluntary and deliberate. Defendants intentionally avoided making any formal records of employees' overtime hours and compensation. The applicable statute of limitations for Defendants' willful violation is three, rather than two, years. Accordingly, Defendants are liable for overtime pay from June 4, 1984 to March 31, 1990.[15]

The Secretary seeks liquidated damages in an amount equivalent to *all* back wages, *see* 29 U.S.C.A. § 216(c) (West 1978), or in the alternative, pre-judgment interest, 26 U.S.C.A. § 6621 (West 1978). A district court may impose liquidated damages to compensate employees for delays in receiving wages that were improperly denied because of violations of the Act. *Brock v. Superior Care, Inc.*, 840 F.2d 1054, 1064 (2d Cir.1988). The imposition of liquidated damages is not punitive. *Marshall v. Brunner*, 668 F.2d 748, 753 (3d Cir.1982). A court, in its discretion, may choose not to award any liquidated damages, or reduce the amount of liquidated damages if the Defendant can demonstrate that (1) the acts or omissions giving rise to minimum wage or overtime violations were in good faith, *and,* (2) the employer had reasonable grounds for believing that the acts or omissions were not in violation of the Act. *See id.; Williams v. Tri–County Growers, Inc.*, 747 F.2d 121, 128–9 (3d Cir.1984). *Brock v. Wilamowsky*, 833 F.2d 11, 19 (2d Cir.1988).

At trial, Defendant Sliwowski testified that payment to employees for maintenance costs did not commence until 1987, five years after the initial Wage and Hour investigation in 1982. When Defendants finally began to change in their employment practices, these changes were made on the advice of counsel. Defendant Sliwowski denies that he had knowledge that his conduct was unlawful, and claims that no one ever informed him that it was unlawful. It is a well established principle that ignorance of the law is not a viable excuse.

Defendants' removal of time cards after forty hours indicates that even if Defendants were not familiar with the Act, they had some knowledge that laws regulating wage payment existed. Furthermore, Defendants

---

such action shall be forever barred unless commenced within two years after the cause of action accrued, except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued.

29 U.S.C.A. § 255 (West 1978).

**15.** March 31, 1990 is the ending date for the minimum wage rate of $3.35 per hour. The Secretary has not requested damages for any year after 1989 and has not requested damages at an other statutory minimum wage rate besides $3.35 per hour. *See* 29 U.S.C.A. § 206 (West Supp.1992).

received actual notice by Wage and Hour investigators that Chez Robert was in violation of Sections of the Act, and should have sought information about the applicability of provisions of the Act at this point. Defendants' deceptive actions, described by former employees, and the notice defendant received through the visits by the U.S. Labor Department's continued requests for records of employees' hours, demonstrate to the Court that the failure to keep adequate records was willful and deliberate. Therefore, liquidated damages are ordered to be paid on the full amount of Defendants' liability.

■ Relying on *Brock v. Superior Care, Inc.*, Defendants contend that actions brought by the Secretary under Section 17 of the Act prohibit the Court from issuing both injunctive relief and liquidated damages. *See Superior Care*, 840 F.2d at 1064. However, the Court is persuaded that both injunctive relief and liquidated damages may be awarded when liquidated damages are available as a remedy in another Section of the Act. *See Dole v. Haulaway, Inc.*, 723 F.Supp. 274, 288 (D.N.J.1989). The Secretary has a valid claim to liquidated damages since the Complaint seeks overtime wages under Section 16(c) of the Act in addition to Section 17 claims. *Superior Care* is distinguishable on the ground that there is no provision for liquidated damages in Section 17. *See Superior Care*, 840 F.2d at 1058, 1062–63, 1064 (explaining that the complaint "alluded" to the liquidated damages, but denying their recovery since suit was brought only under Section 17). As stated above, Sections 16(b) and (c) both have provisions for liquidated damages in addition to back wages and overtime compensation. *See* 29 U.S.C.A. §§ 216(b), (c) (West 1978).

■ One purpose of liquidated damages awards in Fair Labor Standards Act cases is to compensate for delay in receiving wages that should have been paid. *Superior Care*, 840 F.2d at 1064. The Court finds that any

award of prejudgment interest in addition to liquidated damages would be duplicative and therefore punitive. Despite the Third Circuit's recognition of a presumption in favor of prejudgment interest, *See Brock v. Richardson*, 812 F.2d 121, 126–27 (3d Cir.1987), such a finding would not be appropriate in this case since liquidated damages are awarded.

■ Section 17 of the Act permits a court to grant equitable relief in the form of injunctions to restrain future violations and to enforce the remuneration of back wages. *See* 29 U.S.C.A. § 217.[16] (West 1978). Whether injunctive relief will be granted lies in the sound discretion of the district court. *Mitchell v. Lublin, McGaughy & Associates*, 358 U.S. 207, 215, 79 S.Ct. 260, 266, 3 L.Ed.2d 243 (1959).

It is the opinion of this Court that injunctive relief is required to ensure Defendants' compliance with the Act, and to assist the Secretary in enforcing this judgement. Defendants' poor record keeping and failure over an extended period of time to recognize and change its employment practices warrant equitable relief to assist in a more expeditious and orderly recovery of damages.

## VII. Conclusions

Defendants have violated the minimum wage, overtime, and record keeping requirements of the Fair Labor Standards Act. Their conduct was willful, and consequently the three year statute of limitations is applicable.

The total amount of overtime payments for which Defendants are liable is $305,702.88. Defendants are obligated to pay liquidated damages on that full amount.

The Secretary is entitled to injunctive relief to ensure future compliance with the minimum wage, overtime payment, and record keeping requirements of the Act. The Secretary is requested to submit a form of order within ten (10) days implementing this judgement.

---

**16.** Section 217 provides in relevant part:
 The district courts, ... shall have jurisdiction, for cause shown, to restrain violations of section 215 of this title, including the case of violations of section 215(a)(2) of this title the restraint of

any withholding of payment of minimum wages or overtime compensation found by the court to be due to employees under this chapter....
29 U.S.C.A. § 217 (West 1978).

## APPENDIX A
### Back wages

Contents:

Calculations for Testifying Employees ............................. page 988
Calculations for Non-testifying Employees (1984–1987) ............... pages 989–992
Calculations for Non-testifying Employees (1988–1989) .............. pages 992–993
Grand Total (all employees)..................................... page 993

### Key

| | |
|---|---|
| **Name** | Employee's last name |
| **Wks** | Number of weeks that damages have been awarded |
| **Hr** | Average number of overtime hours worked per week |
| **OT** | Back wages due for overtime worked |
| **D1** | Compensation due for employee's first day of work |
| **Unif.** | Initial uniform purchase |
| **A.P.** | Additional uniform purchases |
| **Maint.** | Average cost for cleaning uniforms per week |
| **Gross** | Actual damages due for the period of weeks indicated |

### BACK WAGES

| Name | Wks | Hr | OT | D1 | Unif. | A.P. | Maint. | Gross |
|---|---|---|---|---|---|---|---|---|
| Black | 12 | 10 | 201.00 | 24.12 | 300.00 | 65.00 | 114.00 | 704.12 |
| Brown | 80 | 20 | 2,680.00 | 24.12 | 675.00 | 370.00 | 1,440.00 | 5,189.12 |
| Askari | 30 | 35 | 1,758.75 | 24.12 | 180.00 | 448.00 | 504.00 | 2,914.87 |
| Devine | 76 | 25.5 | 3,246.15 | | 195.00 | 323.50 | 836.00 | 4,600.65 |
| Hertzog | 20 | 22.5 | 753.75 | 24.12 | 189.50 | | 91.50 | 1,058.87 |
| Hill | 4 | 26 | 174.20 | 24.12 | 210.00 | | 48.00 | 456.32 |
| Johnson | 42 | 30 | 2,110.50 | | 282.50 | 135.00 | 630.00 | 3,158.00 |
| Kenney | 6 | 38 | 381.90 | | 160.00 | | 108.00 | 649.90 |
| Mahmoud | 96 | 25 | 4,020.00 | 24.12 | 186.50 | 622.50 | 1,728.00 | 6,581.12 |
| Mannino | 32 | 33 | 1,768.80 | 24.12 | 150.00 | | 576.00 | 2,518.92 |
| Palladino | 30 | 20 | 1,005.00 | 24.12 | 150.00 | 265.00 | 330.00 | 1,774.12 |
| Passwaters | 6 | 20 | 201.00 | 24.12 | | | 66.00 | 291.12 |
| Settimio | 11 | 0 | 0.00 | 16.08 | 122.50 | | 198.00 | 336.58 |
| Maiken | 7 | 7 | 82.08 | | 108.50 | | 126.00 | 316.58 |
| | 5 | 0 | 0.00 | | | | 90.00 | 90.00 |
| Pearce | 5 | 35 | 293.13 | 24.12 | 219.00 | | 75.00 | 611.25 |
| | 17 | 15 | 427.13 | | | | 255.00 | 682.13 |
| Tabei | 41 | 36 | 2,472.30 | | 194.00 | 269.00 | 725.70 | 3,661.00 |
| Rutkoski | 16 | 5 | 134.00 | 24.12 | 185.00 | 245.00 | 240.00 | 828.12 |
| | 78 | 0 | 0.00 | | | | 1,170.00 | 1,170.00 |
| Scavo | 8.6 | 12 | 172.86 | 24.12 | 102.10 | 190.40 | 154.80 | 644.28 |
| Massara | 19 | 19 | 604.68 | 24.12 | 200.00 | | 342.00 | 1,170.80 |
| Steskal | 7 | 0 | 0.00 | | 65.00 | | 21.00 | 86.00 |
| Lynch–Konrad | 16 | 10 | 268.00 | | 157.50 | 57.50 | 136.00 | 619.00 |
| Hodoruk | 2 | 0 | 0.00 | | | | 0.00 | 0.00 |
| Steedle–Kron | 4 | 5 | 33.50 | | 70.00 | | 24.00 | 127.50 |
| TOTAL (testifying employees) | | | 22,788.73 | | | | | 40,240.37 |

| Name | Wks | Hr | OT | D1 | Unif. | A.P. | Maint. | Gross |
|---|---|---|---|---|---|---|---|---|
| Deighan | 32 | 20 | 1,072.00 | 24.12 | 194.00 | 531.00 | 480.00 | 2,301.12 |
| | 50 | 0 | 0.00 | | | | 750.00 | 750.00 |
| Tellez | 39 | 20 | 1,306.50 | 24.12 | 194.00 | 388.00 | 585.00 | 2,497.62 |
| Aivto | 8 | 20 | 268.00 | 24.12 | 194.00 | | 120.00 | 606.12 |
| Aizen | 3 | 0 | 0.00 | 24.12 | 194.00 | | 45.00 | 263.12 |
| Alshiskaf | 4 | 20 | 134.00 | 24.12 | 194.00 | | 60.00 | 412.12 |
| Atturo | 57 | 20 | 1,909.50 | 24.12 | 194.00 | 976.00 | 855.00 | 3,958.62 |
| | 53 | 0 | 0.00 | | | | 795.00 | 795.00 |
| Beswick | 89 | 20 | 2,981.50 | 24.12 | 194.00 | 926.00 | 1,335.00 | 5,460.62 |
| Binder | 19 | 20 | 636.50 | 24.12 | 194.00 | | 285.00 | 1,139.62 |
| Boegly | 2 | 20 | 67.00 | 24.12 | 194.00 | | 30.00 | 315.12 |
| Bonaquist | 2 | 20 | 67.00 | 24.12 | 194.00 | | 30.00 | 315.12 |
| Booth | 2 | 20 | 67.00 | 24.12 | 194.00 | | 30.00 | 315.12 |
| Bricketto | 24 | 20 | 804.00 | | | 219.00 | 360.00 | 1,383.00 |
| Brigandi | 4 | 20 | 134.00 | 24.12 | 194.00 | | 60.00 | 412.12 |
| Brown, L. | 2 | 20 | 67.00 | 24.12 | 194.00 | | 30.00 | 315.12 |
| Brown, M. | 5 | 20 | 167.50 | 24.12 | 194.00 | | 75.00 | 460.62 |
| Brown, S. | 17 | 20 | 569.50 | 24.12 | 194.00 | | 255.00 | 1,042.62 |
| Bruce | 54 | 20 | 1,809.00 | 24.12 | 194.00 | 463.00 | 810.00 | 3,300.12 |
| Buchholtz | 6 | 0 | 0.00 | 24.12 | 194.00 | | 90.00 | 308.12 |
| Burger | 2 | 20 | 67.00 | 24.12 | 194.00 | | 30.00 | 315.12 |
| Burns | 4 | 20 | 134.00 | 24.12 | 194.00 | | 60.00 | 412.12 |
| Burrington | 4 | 20 | 134.00 | 24.12 | 194.00 | | 60.00 | 412.12 |
| Callahan | 4 | 20 | 134.00 | 24.12 | 194.00 | | 60.00 | 412.12 |
| Cashman | 11 | 20 | 368.50 | 24.12 | 194.00 | | 165.00 | 751.62 |
| | 11 | 0 | 0.00 | | | | 165.00 | 165.00 |
| Chryssufos | 1 | 5 | 8.38 | 24.12 | 194.00 | | 15.00 | 241.50 |
| | 2 | 0 | 0.00 | | | | 30.00 | 30.00 |
| Cimini | 2 | 20 | 67.00 | 24.12 | 194.00 | | 30.00 | 315.12 |
| Cleary | 2 | 20 | 67.00 | 24.12 | 194.00 | | 30.00 | 315.12 |
| Coach | 64 | 20 | 2,144.00 | 24.12 | 194.00 | 488.00 | 960.00 | 3,810.12 |
| Cohen | 3 | 20 | 100.50 | 24.12 | 194.00 | | 45.00 | 363.62 |
| Collins | 10 | 20 | 335.00 | 24.12 | 194.00 | | 150.00 | 703.12 |
| Columbis | 5 | 20 | 167.50 | 24.12 | 194.00 | | 75.00 | 460.62 |
| Creel | 6 | 12 | 120.60 | 24.12 | 194.00 | | 90.00 | 428.72 |
| Culciane | 18 | 20 | 603.00 | 24.12 | 194.00 | | 270.00 | 1,091.12 |
| Curtin | 6 | 20 | 201.00 | 24.12 | 194.00 | | 90.00 | 509.12 |
| Defeo | 24 | 20 | 804.00 | 24.12 | 194.00 | 194.00 | 360.00 | 1,576.12 |
| | 6 | 0 | 0.00 | | | | 90.00 | 90.00 |
| Diaz | 101 | 20 | 3,383.50 | 24.12 | 194.00 | 951.00 | 1,515.00 | 6,067.62 |
| Duffy, J. | 13 | 20 | 435.50 | 24.12 | 194.00 | 25.00 | 195.00 | 873.62 |
| Duffy, T. | 4 | 20 | 134.00 | 24.12 | 194.00 | | 60.00 | 412.12 |
| Edmonson | 2 | 0 | 0.00 | 24.12 | 194.00 | | 30.00 | 248.12 |
| Egridge | 2 | 0 | 0.00 | 24.12 | 194.00 | | 30.00 | 248.12 |
| Fenimore | 23 | 20 | 770.50 | 24.12 | 194.00 | 50.00 | 345.00 | 1,383.62 |
| Ferguson | 3 | 20 | 100.50 | 24.12 | 194.00 | | 45.00 | 363.62 |
| Filler | 7 | 0 | 0.00 | 24.12 | 194.00 | | 105.00 | 323.12 |
| Fitzgobbon | 23 | 20 | 770.50 | 24.12 | 194.00 | 50.00 | 345.00 | 1,383.62 |

| Name | Wks | Hr | OT | D1 | Unif. | A.P. | Maint. | Gross |
|---|---|---|---|---|---|---|---|---|
| Fogarty | 4 | 20 | 134.00 | 24.12 | 194.00 | | 60.00 | 412.12 |
| Foley, R. | 7 | 20 | 234.50 | | 194.00 | 25.00 | 105.00 | 558.50 |
| | 18 | 0 | 0.00 | | | | 270.00 | 270.00 |
| Frame | 9 | 20 | 301.50 | 24.12 | 194.00 | | 135.00 | 654.62 |
| Franckowiak | 2 | 20 | 67.00 | 24.12 | 194.00 | | 30.00 | 315.12 |
| Frank | 11 | 20 | 368.50 | 24.12 | 194.00 | | 165.00 | 751.62 |
| Franz | 3 | 20 | 100.50 | 24.12 | 194.00 | | 45.00 | 363.62 |
| Gamble | 2 | 20 | 67.00 | 24.12 | 194.00 | | 30.00 | 315.12 |
| | 5 | 0 | 0.00 | | | | 75.00 | 75.00 |
| Garretson | 11 | 0 | 0.00 | 24.12 | 194.00 | | 165.00 | 383.12 |
| Gillispie | 2 | 20 | 67.00 | 24.12 | 194.00 | | 30.00 | 315.12 |
| Gismonde | 6 | 20 | 201.00 | 24.12 | 194.00 | | 90.00 | 509.12 |
| Grasso | 2 | 20 | 67.00 | 24.12 | 194.00 | | 30.00 | 315.12 |
| Gratz | 12 | 20 | 402.00 | 24.12 | 194.00 | 25.00 | 180.00 | 825.12 |
| | 8 | 0 | 0.00 | | | | 120.00 | 120.00 |
| Hamdi | 2 | 20 | 67.00 | 24.12 | 194.00 | | 30.00 | 315.12 |
| Hashemian | 9 | 20 | 301.50 | 24.12 | 194.00 | | 135.00 | 654.62 |
| Herra | 6 | 0 | 0.00 | 24.12 | 194.00 | | 90.00 | 308.12 |
| Holl | 18 | 20 | 603.00 | 24.12 | 194.00 | 25.00 | 270.00 | 1,116.12 |
| Indelicato | 5 | 20 | 167.50 | 24.12 | 194.00 | | 75.00 | 460.62 |
| Jabbar | 11 | 20 | 368.50 | 24.12 | 194.00 | | 165.00 | 751.62 |
| Kelly, V. | 7 | 20 | 234.50 | 24.12 | 194.00 | | 105.00 | 557.62 |
| Lafferty | 7 | 20 | 234.50 | 24.12 | 194.00 | | 105.00 | 557.62 |
| Lavalla | 2 | 20 | 67.00 | 24.12 | 194.00 | | 30.00 | 315.12 |
| Layer | 19 | 20 | 636.50 | 24.12 | 194.00 | 244.00 | 285.00 | 1,383.62 |
| Lessinger | 7 | 0 | 0.00 | 24.12 | 194.00 | | 105.00 | 323.12 |
| Macauley | 6 | 0 | 0.00 | 24.12 | 194.00 | | 90.00 | 308.12 |
| Mansi | 3 | 20 | 100.50 | 24.12 | 194.00 | | 45.00 | 363.62 |
| McCarthy | 5 | 20 | 167.50 | 24.12 | 194.00 | | 75.00 | 460.62 |
| McDivitt | 16 | 20 | 536.00 | 24.12 | 194.00 | 25.00 | 240.00 | 1,019.12 |
| McElgonn | 3 | 20 | 100.50 | 24.12 | 194.00 | | 45.00 | 363.62 |
| McErlain | 13 | 20 | 435.50 | 24.12 | 194.00 | 25.00 | 195.00 | 873.62 |
| McNeil | 20 | 18 | 603.00 | 24.12 | 194.00 | 25.00 | 300.00 | 1,146.12 |
| Meloni | 22 | 20 | 737.00 | 24.12 | 194.00 | 50.00 | 330.00 | 1,335.12 |
| Mendez | 3 | 20 | 100.50 | 24.12 | 194.00 | | 45.00 | 363.62 |
| Miklas | 3 | 20 | 100.50 | 24.12 | 194.00 | | 45.00 | 363.62 |
| Miller, E. | 14 | 0 | 0.00 | 24.12 | 194.00 | 25.00 | 210.00 | 453.12 |
| Miller, P. | 6 | 20 | 201.00 | 24.12 | 194.00 | | 90.00 | 509.12 |
| Minor | 41 | 20 | 1,373.50 | 24.12 | 194.00 | 269.00 | 615.00 | 2,475.62 |
| Misita | 6 | 20 | 201.00 | 24.12 | 194.00 | | 90.00 | 509.12 |
| Monaghan | 4 | 20 | 134.00 | 24.12 | 194.00 | | 60.00 | 412.12 |
| Morris | 6 | 20 | 201.00 | 24.12 | 194.00 | | 90.00 | 509.12 |
| O'Dowd | 8 | 20 | 268.00 | 24.12 | 194.00 | | 120.00 | 606.12 |
| Olenberg | 49 | 20 | 1,641.50 | 24.12 | 194.00 | 463.00 | 735.00 | 3,057.62 |
| Oswald | 7 | 20 | 234.50 | 24.12 | 194.00 | | 105.00 | 557.62 |
| Panajotopou | 10 | 20 | 335.00 | 24.12 | 194.00 | | 150.00 | 703.12 |
| Pence | 10 | 20 | 335.00 | 24.12 | 194.00 | 25.00 | 150.00 | 728.12 |
| Piacentine | 84 | 20 | 2,814.00 | 24.12 | 194.00 | 732.00 | 1,260.00 | 5,024.12 |
| Poldoski | 12 | 20 | 402.00 | 24.12 | 194.00 | 25.00 | 180.00 | 825.12 |
| Ressa | 18 | 20 | 603.00 | 24.12 | 194.00 | 50.00 | 270.00 | 1,141.12 |
| Roberts | 6 | 20 | 201.00 | 24.12 | 194.00 | | 90.00 | 509.12 |

| Name | Wks | Hr | OT | D1 | Unif. | A.P. | Maint. | Gross |
|---|---|---|---|---|---|---|---|---|
| Rodenhauver | 13 | 0 | 0.00 | 24.12 | 194.00 | 25.00 | 195.00 | 438.12 |
| Rosato | 8 | 20 | 268.00 | 24.12 | 194.00 | | 120.00 | 606.12 |
| Salavaty | 3 | 20 | 100.50 | 24.12 | 194.00 | | 45.00 | 363.62 |
| Saltsman | 9 | 20 | 301.50 | 24.12 | 194.00 | 25.00 | 135.00 | 679.62 |
| Schroeder | 4 | 20 | 134.00 | 24.12 | 194.00 | | 60.00 | 412.12 |
| Segal | 7 | 0 | 0.00 | 24.12 | 194.00 | | 105.00 | 323.12 |
| Servonat | 3 | 20 | 100.50 | 24.12 | 194.00 | | 45.00 | 363.62 |
| Shapiro, G. | 31 | 20 | 1,038.50 | 24.12 | 194.00 | 219.00 | 465.00 | 1,940.62 |
| Shearer | 6 | 0 | 0.00 | 24.12 | 194.00 | 25.00 | 90.00 | 333.12 |
| Shefki | 17 | 20 | 569.50 | 24.12 | 194.00 | 25.00 | 255.00 | 1,067.62 |
| Simon | 3 | 20 | 100.50 | 24.12 | 194.00 | | 45.00 | 363.62 |
| Sistrunk | 13 | 20 | 435.50 | 24.12 | 194.00 | 50.00 | 195.00 | 898.62 |
| Steele | 2 | 20 | 67.00 | 24.12 | 194.00 | | 30.00 | 315.12 |
| Stern | 5 | 20 | 167.50 | 24.12 | 194.00 | | 75.00 | 460.62 |
| Storholm | 2 | 20 | 67.00 | 24.12 | 194.00 | | 30.00 | 315.12 |
| Tomasello | 7 | 20 | 234.50 | 24.12 | 194.00 | | 105.00 | 557.62 |
| Trainer | 9 | 20 | 301.50 | 24.12 | 194.00 | | 135.00 | 654.62 |
| Trump | 4 | 20 | 134.00 | 24.12 | 194.00 | | 60.00 | 412.12 |
| Twordzdlo | 6 | 20 | 201.00 | 24.12 | 194.00 | | 90.00 | 509.12 |
| Stofel | 26 | 20 | 871.00 | | 55.00 | | 390.00 | 1,316.00 |
| Ucciferri | 1 | 20 | 33.50 | 24.12 | 194.00 | | 15.00 | 266.62 |
| Uhler | 4 | 20 | 134.00 | 24.12 | 194.00 | | 60.00 | 412.12 |
| Viggiani | 3 | 20 | 100.50 | 24.12 | 194.00 | | 45.00 | 363.62 |
| Villardi | 6 | 0 | 0.00 | 24.12 | 194.00 | | 90.00 | 308.12 |
| Walsh, T. | 33 | 20 | 1,105.50 | 24.12 | 194.00 | 244.00 | 495.00 | 2,062.62 |
| Weisen | 2 | 0 | 0.00 | 24.12 | 194.00 | | 30.00 | 248.12 |
| Whipple | 7 | 20 | 234.50 | 24.12 | 194.00 | | 105.00 | 557.62 |
| Williams | 27 | 20 | 904.50 | 24.12 | 194.00 | 219.00 | 405.00 | 1,746.62 |
| Wright | 71 | 20 | 2,378.50 | 24.12 | 194.00 | 732.00 | 1,065.00 | 4,393.62 |
| Yazjerd | 42 | 20 | 1,407.00 | 24.12 | 194.00 | 269.00 | 630.00 | 2,524.12 |
| Yeylaghi | 32 | 20 | 1,072.00 | 24.12 | 194.00 | 244.00 | 480.00 | 2,014.12 |
| Zane | 5 | 20 | 167.50 | 24.12 | 194.00 | | 75.00 | 460.62 |
| Conway | 5 | 20 | 167.50 | | | | 0.00 | 167.50 |
| Foley, E. | 4 | 10 | 67.00 | | | | 0.00 | 67.00 |
| Sharp | 4.3 | 5 | 36.01 | | | | 0.00 | 36.01 |
| Blackson | 0 | 0 | 0.00 | 134.00 | | | 0.00 | 134.00 |
| Anderson | 0 | 0 | 0.00 | | 97.00 | | 0.00 | 97.00 |
| Berman | 2 | 0 | 0.00 | | 97.00 | | 18.00 | 115.00 |
| Butler | 1 | 0 | 0.00 | | 97.00 | | 9.00 | 106.00 |
| Carota | 0 | 0 | 0.00 | | 97.00 | | 0.00 | 97.00 |
| Dean | 0 | 0 | 0.00 | | 97.00 | | 0.00 | 97.00 |
| DelloBuono | 0 | 0 | 0.00 | | 97.00 | | 0.00 | 97.00 |
| Ford | 5 | 0 | 0.00 | | 97.00 | | 45.00 | 142.00 |
| Horton | 0 | 0 | 0.00 | | 97.00 | | 0.00 | 97.00 |
| Hughes | 3 | 0 | 0.00 | | 97.00 | | 27.00 | 124.00 |
| Kelly, L. | 4 | 0 | 0.00 | | 97.00 | | 36.00 | 133.00 |
| Lawler | 1 | 0 | 0.00 | | 97.00 | | 9.00 | 106.00 |
| Marino | 14 | 0 | 0.00 | | 97.00 | | 126.00 | 223.00 |
| Mjehovich | 0 | 0 | 0.00 | | 97.00 | | 0.00 | 97.00 |
| Moore | 2 | 0 | 0.00 | | 97.00 | | 18.00 | 115.00 |
| Page | 3 | 0 | 0.00 | | 97.00 | | 27.00 | 124.00 |

| Name | Wks | Hr | OT | D1 | Unif. | A.P. | Maint. | Gross |
|---|---|---|---|---|---|---|---|---|
| Ramoundos | 2 | 0 | 0.00 | | 97.00 | | 18.00 | 115.00 |
| Rice | 0 | 0 | 0.00 | | 97.00 | | 0.00 | 97.00 |
| Sarama | 0 | 0 | 0.00 | | 97.00 | | 0.00 | 97.00 |
| Silvey | 1 | 0 | 0.00 | | 97.00 | | 9.00 | 106.00 |
| Stebbins | 0 | 0 | 0.00 | | 97.00 | | 0.00 | 97.00 |
| Taulane | 2 | 0 | 0.00 | | 97.00 | | 18.00 | 115.00 |
| Vaul | 1 | 0 | 0.00 | | 97.00 | | 9.00 | 106.00 |
| TOTAL 1984–88 (non-testifying) | | | | | | | | 118,196.89 |

## BACK WAGES

| Name | Wks | Hr | OT | D1 | Unif. | A.P. | Maint. | Gross |
|---|---|---|---|---|---|---|---|---|
| Brichard | 3 | 0 | 0.00 | | 97.00 | | 27.00 | 124.00 |
| Dorris | 1 | 0 | 0.00 | | 97.00 | | 9.00 | 106.00 |
| Godwin | 0 | 0 | 0.00 | | 97.00 | | 0.00 | 97.00 |
| Hughes | 1 | 5 | 8.38 | | | | 9.00 | 17.38 |
| | 6 | 0 | 0.00 | | | | 54.00 | 54.00 |
| Kogel | 1 | 0 | 0.00 | | 97.00 | | 9.00 | 106.00 |
| Long | 1 | 0 | 0.00 | | 97.00 | | 9.00 | 106.00 |
| Lynch | 0 | 0 | 0.00 | | 97.00 | | 0.00 | 97.00 |
| McClain | 0 | 0 | 0.00 | | 97.00 | | 0.00 | 97.00 |
| McSorley | 0 | 0 | 0.00 | | 97.00 | | 0.00 | 97.00 |
| Miller, L. | 2 | 0 | 0.00 | | 97.00 | | 18.00 | 115.00 |
| Wender | 3 | 0 | 0.00 | | 97.00 | | 27.00 | 124.00 |
| Wilkinson | 2 | 0 | 0.00 | | 97.00 | | 18.00 | 115.00 |
| Adams | 41 | 0 | 0.00 | | 194.00 | 244.00 | 615.00 | 1,053.00 |
| Agaoglu | 19 | 0 | 0.00 | | 194.00 | 25.00 | 285.00 | 504.00 |
| Baggott | 2 | 0 | 0.00 | | 194.00 | | 30.00 | 224.00 |
| Besnick | 69 | 0 | 0.00 | | | 638.00 | 1,035.00 | 1,673.00 |
| Bruce | 18 | 0 | 0.00 | | | 25.00 | 270.00 | 295.00 |
| Callaghan | 1 | 13 | 21.78 | | 194.00 | 25.00 | 15.00 | 255.78 |
| | 16 | 0 | 0.00 | | | | 240.00 | 240.00 |
| Camerata | 3 | 0 | 0.00 | | 194.00 | | 45.00 | 239.00 |
| Carey | 1 | 8.5 | 14.24 | | 194.00 | 50.00 | 15.00 | 273.24 |
| | 20 | 0 | 0.00 | | | | 300.00 | 300.00 |
| Dahdah | 5 | 0 | 0.00 | | 194.00 | | 75.00 | 269.00 |
| Demirjian | 17 | 0 | 0.00 | | 194.00 | 25.00 | 255.00 | 474.00 |
| Evans | 4 | 0 | 0.00 | | 194.00 | | 60.00 | 254.00 |
| Giles | 12 | 0 | 0.00 | | 194.00 | 25.00 | 180.00 | 399.00 |
| Giorgio | 10 | 0 | 0.00 | | 194.00 | 25.00 | 150.00 | 369.00 |
| Hall | 23 | 0 | 0.00 | | 194.00 | 219.00 | 345.00 | 758.00 |
| Havens | 3 | 0 | 0.00 | | 194.00 | | 45.00 | 239.00 |
| Ibrahim | 13 | 0 | 0.00 | | 194.00 | 25.00 | 195.00 | 414.00 |
| Jones | 3 | 0 | 0.00 | | 194.00 | | 45.00 | 239.00 |
| Korek | 5 | 0 | 0.00 | | 194.00 | | 75.00 | 269.00 |
| Lettieri | 3 | 0 | 0.00 | | 194.00 | | 45.00 | 239.00 |
| Levin | 15 | 0 | 0.00 | | 194.00 | 25.00 | 225.00 | 444.00 |

| Name | Wks | Hr | OT | D1 | Unif. | A.P. | Maint. | Gross |
|---|---|---|---|---|---|---|---|---|
| Macauley | 1 | 18 | 30.15 | | | 488.00 | 15.00 | 533.15 |
| | 58 | 0 | 0.00 | | | | 870.00 | 870.00 |
| Magin | 11 | 0 | 0.00 | | 194.00 | | 165.00 | 359.00 |
| Makorey | 3 | 0 | 0.00 | | 194.00 | | 45.00 | 239.00 |
| Martin | 4 | 0 | 0.00 | | 194.00 | | 60.00 | 254.00 |
| Perez | 5 | 0 | 0.00 | | 194.00 | | 75.00 | 269.00 |
| Piacentine | 16 | 0 | 0.00 | | | 25.00 | 240.00 | 265.00 |
| Plitsch | 2 | 0 | 0.00 | | 194.00 | | 30.00 | 224.00 |
| Plummo | 1 | 4 | 6.70 | | 194.00 | 25.00 | 15.00 | 240.70 |
| | 12 | 0 | 0.00 | | | | 180.00 | 180.00 |
| Robertson | 4 | 0 | 0.00 | | 194.00 | | 60.00 | 254.00 |
| Rose | 4 | 0 | 0.00. | | 194.00 | | 60.00 | 254.00 |
| Sallavati | 1 | 20 | 33.50 | | | 244.00 | 15.00 | 292.50 |
| | 28 | 0 | 0.00 | | | | 420.00 | 420.00 |
| Scialabba | 9 | 0 | 0.00 | | 194.00 | | 135.00 | 329.00 |
| Segars | 4 | 0 | 0.00 | | 194.00 | | 60.00 | 254.00 |
| Stokic | 2 | 0 | 0.00 | | 194.00 | | 30.00 | 224.00 |
| Torres | 3 | 0 | 0.00 | | 194.00 | | 45.00 | 239.00 |
| Vaccaro | 21 | 0 | 0.00 | | 194.00 | 50.00 | 315.00 | 559.00 |
| Walsh, D. | 7 | 0 | 0.00 | | 194.00 | | 105.00 | 299.00 |
| Weiner | 9 | 0 | 0.00 | | 194.00 | | 135.00 | 329.00 |
| Weisen | 2 | 0 | 0.00 | | | | 30.00 | 30.00 |
| Wiesemann | 1 | 8 | 13.40 | | 194.00 | | 15.00 | 222.40 |
| | 11 | 0 | 0.00 | | | | 165.00 | 165.00 |
| Wright | 63 | 0 | 0.00 | | | 137.50 | 945.00 | 1,082.50 |
| Stabler | 0 | 0 | 0.00 | | 60.00 | | 0.00 | 60.00 |
| Crawford | 9 | 0 | 0.00 | | 105.00 | | 40.50 | 145.50 |
| Costello | 7 | 0 | 0.00 | | 60.00 | | 40.25 | 100.25 |
| TOTAL 1988–89 (non-testifying) | | | | | | | | 19,372.40 |
| **GRAND TOTAL (all employees)** | | | | | | | | **177,809.66** |

# APPENDIX B
## Tip Credit Remunerations

Contents:

Calculations for Testifying Employees ............................. pages 994
Calculations for Non-testifying Employees (1984–1987) .............. pages 994–997
Calculations for Non-testifying Employees (1988–1989) .............. pages 998–999
Grand Total (all employees)....................................... page 999

Key

| | |
|---|---|
| **Employee's Name** | Employee's last name |
| **Weeks** | Number of weeks that damages are awarded |
| **Reg Hrs** | Number of regular hours worked per week |
| **OT Hrs** | Average number of overtime hours worked per week (i.e., hours worked in excess of forty hours) |
| **Tip Credit Owed** | Amount in tip credit remunerations due to each employee for the weeks indicated |

## TIP CREDITS

| Employee's Name | Weeks | Reg Hrs | OT Hrs | Tip Credit Owed |
|---|---|---|---|---|
| Black | 12 | 40 | 10 | 804.00 |
| Brown | 80 | 40 | 20 | 6,432.00 |
| Askari | 30 | 40 | 35 | 3,015.00 |
| Devine | 76 | 40 | 25.5 | 6,670.52 |
| Hertzog | 20 | 40 | 22.5 | 1,675.00 |
| Hill | 4 | 40 | 26 | 353.76 |
| Johnson | 42 | 40 | 30 | 3,939.60 |
| Kenney | 6 | 40 | 38 | 627.12 |
| Mahmoud | 96 | 40 | 25 | 8,361.60 |
| Mannino | 32 | 40 | 33 | 3,130.24 |
| Palladino | 30 | 40 | 20 | 2,412.00 |
| Passwaters | 6 | 40 | 20 | 482.40 |
| Settimio | 11 | 40 | 0 | 589.60 |
| Maiken | 7 | 40 | 7 | 440.86 |
| | 5 | 40 | 0 | 268.00 |
| Pearce | 5 | 40 | 35 | 502.50 |
| | 17 | 40 | 15 | 1,252.90 |
| Tabei | 41 | 40 | 36 | 4,175.44 |
| Rutkoski | 16 | 40 | 5 | 964.80 |
| | 78 | 40 | 0 | 4,180.80 |
| Scavo | 8.6 | 40 | 12 | 599.25 |
| Massara | 19 | 40 | 19 | 1,502.14 |
| Steskal | 7 | 40 | 0 | 375.20 |
| Lynch–Konrad | 16 | 40 | 10 | 1,072.00 |
| Hodoruk | 2 | 32 | 0 | 85.76 |
| Steedle–Kron | 4 | 40 | 5 | 241.20 |
| TOTAL | | | | 54,153.69 |
| (testifying employees) | | | | |

## TIP CREDITS

| Employee's Name | Weeks | Reg Hrs | OT Hrs | Tip Credit Owed |
|---|---|---|---|---|
| Deighan | 32 | 40 | 20 | 2,572.80 |
| | 50 | 40 | 0 | 2,680.00 |
| Tellez | 39 | 40 | 20 | 3,135.60 |
| Aivto | 8 | 40 | 20 | 643.20 |

| Employee's Name | Weeks | Reg Hrs | OT Hrs | Tip Credit Owed |
|---|---|---|---|---|
| Aizen | 3 | 40 | 0 | 160.80 |
| Alshiskaf | 4 | 40 | 20 | 321.60 |
| Atturo | 57 | 40 | 20 | 4,582.80 |
| | 53 | 40 | 0 | 2,840.80 |
| Beswick | 89 | 40 | 20 | 7,155.60 |
| Binder | 19 | 40 | 20 | 1,527.60 |
| Boegly | 2 | 40 | 20 | 160.80 |
| Bonaquist | 2 | 40 | 20 | 160.80 |
| Booth | 2 | 40 | 20 | 160.80 |
| Bricketto | 24 | 40 | 20 | 1,929.60 |
| Brigandi | 4 | 40 | 20 | 321.60 |
| Brown, L. | 2 | 40 | 20 | 160.80 |
| Brown, M. | 5 | 40 | 20 | 402.00 |
| Brown, S. | 17 | 40 | 20 | 1,366.80 |
| Bruce | 54 | 40 | 20 | 4,341.60 |
| Buchholtz | 6 | 40 | 0 | 321.60 |
| Burger | 2 | 40 | 20 | 160.80 |
| Burns | 4 | 40 | 20 | 321.60 |
| Burrington | 4 | 40 | 20 | 321.60 |
| Callahan | 4 | 40 | 20 | 321.60 |
| Cashman | 11 | 40 | 20 | 884.40 |
| | 11 | 40 | 0 | 589.60 |
| Chryssufos | 1 | 40 | 5 | 60.30 |
| | 2 | 40 | 0 | 107.20 |
| Cimini | 2 | 40 | 20 | 160.80 |
| Cleary | 2 | 40 | 20 | 160.80 |
| Coach | 64 | 40 | 20 | 5,145.60 |
| Cohen | 3 | 40 | 20 | 241.20 |
| Collins | 10 | 40 | 20 | 804.00 |
| Columbis | 5 | 40 | 20 | 402.00 |
| Creel | 6 | 40 | 10 | 402.00 |
| Culciane | 18 | 40 | 20 | 1,447.20 |
| Curtin | 6 | 40 | 20 | 482.40 |
| Defeo | 24 | 40 | 20 | 1,929.60 |
| | 6 | 40 | 0 | 321.60 |
| Diaz | 101 | 40 | 20 | 8,120.40 |
| Duffy, J. | 13 | 40 | 20 | 1,045.20 |
| Duffy, T. | 4 | 40 | 20 | 321.60 |
| Edmonson | 2 | 40 | 0 | 107.20 |
| Egridge | 2 | 40 | 0 | 107.20 |
| Fenimore | 23 | 40 | 20 | 1,849.20 |
| Ferguson | 3 | 40 | 20 | 241.20 |
| Filler | 7 | 40 | 0 | 375.20 |
| Fitzgobbon | 23 | 40 | 20 | 1,849.20 |
| Fogarty | 4 | 40 | 20 | 321.60 |
| Foley, R. | 7 | 40 | 20 | 562.80 |
| | 18 | 40 | 0 | 964.80 |
| Frame | 9 | 40 | 20 | 723.60 |
| Franckowiak | 2 | 40 | 20 | 160.80 |
| Frank | 11 | 40 | 20 | 884.40 |
| Franz | 3 | 40 | 20 | 241.20 |

| Employee's Name | Weeks | Reg Hrs | OT Hrs | Tip Credit Owed |
|---|---|---|---|---|
| Gamble | 2 | 40 | 20 | 160.80 |
| | 5 | 40 | 0 | 268.00 |
| Garretson | 11 | 40 | 0 | 589.60 |
| Gillispie | 2 | 40 | 20 | 160.80 |
| Gismonde | 6 | 40 | 20 | 482.40 |
| Grasso | 2 | 40 | 20 | 160.80 |
| Gratz | 12 | 40 | 20 | 964.80 |
| | 8 | 40 | 0 | 428.80 |
| Hamdi | 2 | 40 | 20 | 160.80 |
| Hashemian | 9 | 40 | 20 | 723.60 |
| Herra | 6 | 40 | 0 | 321.60 |
| Holl | 18 | 40 | 20 | 1,447.20 |
| Indelicato | 5 | 40 | 20 | 402.00 |
| Jabbar | 11 | 40 | 20 | 884.40 |
| Kelly, V. | 7 | 40 | 20 | 562.80 |
| Lafferty | 7 | 40 | 20 | 562.80 |
| Lavalla | 2 | 40 | 20 | 160.80 |
| Layer | 19 | 40 | 20 | 1,527.60 |
| Lessinger | 7 | 40 | 0 | 375.20 |
| Macauley | 6 | 40 | 0 | 321.60 |
| Mansi | 3 | 40 | 20 | 241.20 |
| McCarthy | 5 | 40 | 20 | 402.00 |
| McDivitt | 16 | 40 | 20 | 1,286.40 |
| McElgonn | 3 | 40 | 20 | 241.20 |
| McErlain | 13 | 40 | 20 | 1,045.20 |
| McNeil | 20 | 40 | 18 | 1,554.40 |
| Meloni | 22 | 40 | 20 | 1,768.80 |
| Mendez | 3 | 40 | 20 | 241.20 |
| Miklas | 3 | 40 | 20 | 241.20 |
| Miller, E. | 14 | 40 | 0 | 750.40 |
| Miller, P. | 6 | 40 | 20 | 482.40 |
| Minor | 41 | 40 | 20 | 3,296.40 |
| Misita | 6 | 40 | 20 | 482.40 |
| Monaghan | 4 | 40 | 20 | 321.60 |
| Morris | 6 | 40 | 20 | 482.40 |
| O'Dowd | 8 | 40 | 20 | 643.20 |
| Olenberg | 49 | 40 | 20 | 3,939.60 |
| Oswald | 7 | 40 | 20 | 562.80 |
| Panajotopou | 10 | 40 | 20 | 804.00 |
| Pence | 10 | 40 | 20 | 804.00 |
| Piacentine | 84 | 40 | 20 | 6,753.60 |
| Poldoski | 12 | 40 | 20 | 964.80 |
| Ressa | 18 | 40 | 20 | 1,447.20 |
| Roberts | 6 | 40 | 20 | 482.40 |
| Rodenhauver | 13 | 40 | 0 | 696.80 |
| Rosato | 8 | 40 | 20 | 643.20 |
| Salavaty | 3 | 40 | 20 | 241.20 |
| Saltsman | 9 | 40 | 20 | 723.60 |
| Schroeder | 4 | 40 | 20 | 321.60 |
| Segal | 7 | 40 | 0 | 375.20 |
| Servonat | 3 | 40 | 20 | 241.20 |

| Employee's Name | Weeks | Reg Hrs | OT Hrs | Tip Credit Owed |
|---|---|---|---|---|
| Shapiro, G. | 31 | 40 | 20 | 2,492.40 |
| Shearer | 6 | 40 | 0 | 321.60 |
| Shefki | 17 | 40 | 20 | 1,366.80 |
| Simon | 3 | 40 | 20 | 241.20 |
| Sistrunk | 13 | 40 | 20 | 1,045.20 |
| Steele | 2 | 40 | 20 | 160.80 |
| Stern | 5 | 40 | 20 | 402.00 |
| Storholm | 2 | 40 | 20 | 160.80 |
| Tomasello | 7 | 40 | 20 | 562.80 |
| Trainer | 9 | 40 | 20 | 723.60 |
| Trump | 4 | 40 | 20 | 321.60 |
| Twordzdlo | 6 | 40 | 20 | 482.40 |
| Stofel | 26 | 40 | 20 | 2,090.40 |
| Ucciferri | 1 | 40 | 20 | 80.40 |
| Uhler | 4 | 40 | 20 | 321.60 |
| Viggiani | 3 | 40 | 20 | 241.20 |
| Villardi | 6 | 40 | 0 | 321.60 |
| Walsh, T. | 33 | 40 | 20 | 2,653.20 |
| Weisen | 2 | 40 | 0 | 107.20 |
| Whipple | 7 | 40 | 20 | 562.80 |
| Williams | 27 | 40 | 20 | 2,170.80 |
| Wright | 71 | 40 | 20 | 5,708.40 |
| Yazjerd | 42 | 40 | 20 | 3,376.80 |
| Yeylaghi | 32 | 40 | 20 | 2,572.80 |
| Zane | 5 | 40 | 20 | 402.00 |
| Conway | 5 | 40 | 20 | 402.00 |
| Foley, E. | 4 | 40 | 10 | 268.00 |
| Sharp | 4.3 | 40 | 5 | 259.29 |
| Blackson | 0 | 0 | 0 | 0.00 |
| Anderson | 0 | 0 | 0 | 0.00 |
| Berman | 2 | 40 | 0 | 107.20 |
| Butler | 1 | 40 | 0 | 53.60 |
| Carota | 0 | 40 | 0 | 0.00 |
| Dean | 0 | 40 | 0 | 0.00 |
| DelloBuono | 0 | 40 | 0 | 0.00 |
| Ford | 5 | 40 | 0 | 268.00 |
| Horton | 0 | 40 | 0 | 0.00 |
| Hughes | 3 | 40 | 0 | 160.80 |
| Kelly, L. | 4 | 40 | 0 | 214.40 |
| Lawler | 1 | 40 | 0 | 53.60 |
| Marino | 14 | 40 | 0 | 750.40 |
| Mjehovich | 0 | 40 | 0 | 0.00 |
| Moore | 2 | 40 | 0 | 107.20 |
| Page | 3 | 40 | 0 | 160.80 |
| Ramoundos | 2 | 40 | 0 | 107.20 |
| Rice | 0 | 40 | 0 | 0.00 |
| Sarama | 0 | 40 | 0 | 0.00 |
| Silvey | 1 | 40 | 0 | 53.60 |
| Stebbins | 0 | 40 | 0 | 0.00 |
| Taulane | 2 | 40 | 0 | 107.20 |
| Vaul | 1 | 40 | 0 | 53.60 |
| TOTAL 1984–88 (non-testifying) | | | | 142,252.39 |

## TIP CREDITS

| Employee's Name | Weeks | Reg Hrs | OT Hrs | Tip Credit Owed |
|---|---|---|---|---|
| Brichard | 3 | 40 | 0 | 160.80 |
| Dorris | 1 | 40 | 0 | 53.60 |
| Godwin | 0 | 40 | 0 | 0.00 |
| Hughes | 1 | 40 | 5 | 60.30 |
| | 6 | 40 | 0 | 321.60 |
| Kogel | 1 | 40 | 0 | 53.60 |
| Long | 1 | 40 | 0 | 53.60 |
| Lynch | 0 | 40 | 0 | 0.00 |
| McClain | 0 | 40 | 0 | 0.00 |
| McSorley | 0 | 40 | 0 | 0.00 |
| Miller, L. | 2 | 40 | 0 | 107.20 |
| Wender | 3 | 40 | 0 | 160.80 |
| Wilkinson | 2 | 40 | 0 | 107.20 |
| Adams | 41 | 40 | 0 | 2,197.60 |
| Agaoglu | 19 | 40 | 0 | 1,018.40 |
| Baggott | 2 | 40 | 0 | 107.20 |
| Besnick | 69 | 40 | 0 | 3,698.40 |
| Bruce | 18 | 40 | 0 | 964.80 |
| Callaghan | 1 | 40 | 13 | 71.02 |
| | 16 | 40 | 0 | 857.60 |
| Camerata | 3 | 40 | 0 | 160.80 |
| Carey | 1 | 40 | 8.5 | 64.99 |
| | 20 | 40 | 0 | 1,072.00 |
| Dahdah | 5 | 40 | 0 | 268.00 |
| Demirjian | 17 | 40 | 0 | 911.20 |
| Evans | 4 | 40 | 0 | 214.40 |
| Giles | 12 | 40 | 0 | 643.20 |
| Giorgio | 10 | 40 | 0 | 536.00 |
| Hall | 23 | 40 | 0 | 1,232.80 |
| Havens | 3 | 40 | 0 | 160.80 |
| Ibrahim | 13 | 40 | 0 | 696.80 |
| Jones | 3 | 40 | 0 | 160.80 |
| Korek | 5 | 40 | 0 | 268.00 |
| Lettieri | 3 | 40 | 0 | 160.80 |
| Levin | 15 | 40 | 0 | 804.00 |
| Macauley | 1 | 40 | 18 | 77.72 |
| | 58 | 40 | 0 | 3,108.80 |
| Magin | 11 | 40 | 0 | 589.60 |
| Makorey | 3 | 40 | 0 | 160.80 |
| Martin | 4 | 40 | 0 | 214.40 |
| Perez | 5 | 40 | 0 | 268.00 |
| Piacentine | 16 | 40 | 0 | 857.60 |
| Plitsch | 2 | 40 | 0 | 107.20 |
| Plummo | 1 | 40 | 4 | 58.96 |
| | 12 | 40 | 0 | 643.20 |
| Robertson | 4 | 40 | 0 | 214.40 |

| Employee's Name | Weeks | Reg Hrs | OT Hrs | Tip Credit Owed |
|---|---|---|---|---|
| Rose | 4 | 40 | 0 | 214.40 |
| Sallavati | 1 | 40 | 20 | 80.40 |
| | 28 | 40 | 0 | 1,500.80 |
| Scialabba | 9 | 40 | 0 | 482.40 |
| Segars | 4 | 40 | 0 | 214.40 |
| Stokic | 2 | 40 | 0 | 107.20 |
| Torres | 3 | 40 | 0 | 160.80 |
| Vaccaro | 21 | 40 | 0 | 1,125.60 |
| Walsh, D. | 7 | 40 | 0 | 375.20 |
| Weiner | 9 | 40 | 0 | 482.40 |
| Weisen | 2 | 40 | 0 | 107.20 |
| Wiesemann | 1 | 40 | 8 | 64.32 |
| | 11 | 40 | 0 | 589.60 |
| Wright | 63 | 40 | 0 | 3,376.80 |
| Stabler | 0 | 40 | 0 | 0.00 |
| Crawford | 9 | 40 | 0 | 482.40 |
| Costello | 7 | 40 | 0 | 375.20 |
| TOTAL 1988–89 (non-testifying) | | | | 33,388.11 |
| GRAND TOTAL (all employees) | | | | 229,794.19 |